The State vs. Martin.

THE STATE VS. MARTIN.

CRIMINAL LAW. *New Trial — Accused shall not be twice put in jeopardy — Dying Declarations — Homicide, when justifiable — When criminal.*

1. Where a prisoner is found guilty of one part of the charge on which he is tried and not of another, or guilty upon one count of the indictment and not guilty on another, and a new trial is granted him, he can not upon the second trial be convicted of the matter of which he was acquitted on the first.

2. Thus, upon an indictment for murder, where the defendant is found " not guilty of murder, but guilty of manslaughter in the second degree ," and is granted a new trial, such new trial must be held to relate only to the question whether he is guilty of manslaughter in the second degree, and he cannot therein be convicted of any higher crime.

3. By asking for such new trial, the accused does not, as to the higher crime of which he is acquited, waive the protection of the constitutional provision that he shall not for the same offense be twice put in jeopardy of punishment.

4. Whether upon the second trial there should be another arraignment of the accused, is not here decided.

5. But where there is no new arraignment, the fact that the accused has not pleaded the former acquittal in bar, cannot deprive him of the benefit of the aforesaid constitutional provision.

6. Where the dying declarations of the person whom the defendant is charged with killing, as to the circumstances of the killing, were in part dictated to a justice of the peace by a third person, but the material part was taken from the dying person himself by the justice, and the whole, as written down by the justice, was read over to the deceased and assented to by him (he being aware of his condition), and the part thus taken directly from his lips was alone read to the jury, against defendant's general objection to its competency, without any demand that the whole should be read, if any: *Held,*

(1.) That the declarations were competent evidence.

(2.) That perhaps *the whole* thereof should have been read together, had the accused demanded it.

(3.) That in the absence of such demand, there was no error in reading only the part actually read.

7. The homicide having occurred in defendant's dwelling house, it was not error to instruct the jury that if the deceased was lawfully in said house, having entered peaceably for the transaction of business, and

had not been ordered to leave before the beginning of the affray, and if the affray was wholly personal between him and defendant, and did not involve any violence or attempted or intended violence to the dwelling or property or family, then the defendant could be justified only under the same circumstances that would justify him had the affray occurred elsewhere, except that, if attacked, he was not obliged to retreat, but might stand his ground and defend himself with all necessary force, even to the extent of taking life if that was necessary to protect him from great personal injury.

8. Nor was it error to instruct the jury further, that to render the killing justifiable they must find that defendant had been attacked, or was menaced with an immediate attack, by the deceased; that the appearances of the attack made or threatened were such as to give him reasonable ground to apprehend a design to do him some great personal injury, and reasonable cause to believe that there was imminent danger of such design being accomplished.

9. Nor was it error to further instruct the jury, that if the deceased only intended an assault and battery upon the defendant, or intended to engage in a personal encounter with him, and did not intend any personal violence upon him unless defendant voluntarily chose to engage in such encounter, but nevertheless defendant sprang after deceased, and without further provocation stabbed and killed him, then such killing was a criminal homicide; and that "mere words, however violent, unaccompanied by overt acts, could never furnish a justifiable cause for an attack."

10. It is not error, in such a case, to refuse correct instructions asked by defendant, where the jury are correctly and fully instructed on the same points in the general charge.

REPORTED from the Circuit Court for *Walworth* County, by the judge of the first circuit.

The case is fully stated in the opinion of the court.

The *Attorney General*, for the state.

*Johnson & Rietbrock*, for defendant.

COLE, J. This cause has been reported by the judge of the first circuit, under section 8, chap. 180, R. S., in order to obtain the decision of this court upon certain questions of law arising upon the trial. The report is made at the request of the defendant, and the circuit judge states in his certificate that he

considers these questions of such importance and so doubtful as to require the decision of this court upon them.

It appears from the record sent up by the court below, that the defendant was tried at the October term, 1870, of the circuit court for Racine county, upon an indictment which charges him, in apt words, of having murdered one Derrick West, to which indictment he interposed the plea of not guilty. Upon that trial the jury expressly found the defendant "*not guilty of murder, but guilty of manslaughter in the second degree.*" The defendant moved the court to set aside this verdict and grant a new trial upon certain affidavits which tended to show that one of the jurors who tried the cause, was not an impartial juror. This motion was granted. Subsequently the defendant made an application for a change of the place of trial to another county, upon the ground that the people of Racine county were so prejudiced against him that he could not have a fair and impartial trial. The application was founded upon his affidavit. The court granted the motion and changed the place of trial to Walworth county. At the September term, 1871, of the circuit court of the latter county, the defendant was again tried upon the issue made up prior to the first trial — there being no further arraignment of the defendant or plea on his part. The jury upon the second trial found the defendant *guilty of murder in the first degree*, the court having instructed them that they might so find if satisfied from the evidence, that the facts attending the homicide warranted such a verdict. And the first question now submitted by the circuit judge for our decision is:

" The defendant having been once tried upon the indictment in this cause, and having been found not guilty of murder, but guilty of manslaughter in the second degree, was it competent to try him again upon the same indictment and convict him of murder in the first degree — the new trial having been granted upon his motion as above stated?" We are of the opinion that this question, both upon principle and authority, must be answered in the negative.

The doctrine is well settled in this state, that courts have the power to grant a new trial after conviction, for good cause, upon the application of the defendant, and that no principle of the constitution or of the common law, which is essential to the protection of the rights of the individual, is violated thereby. The general rule is that one trial and verdict protect the defendant against any subsequent accusation, whether the verdict be for or against him, and whether the court is satisfied with the verdict or not. Cooley on Cons. Lim., p. 326 ; *Gee v. Keenan,* 7 Wis., 695 ; *State v. Kemp et al.,* 17 Wis., 669. But a person already convicted may waive the constitutional protection against a second prosecution, and ask for a new trial to relieve himself from the jeopardy which he is in. And when he does so, what ought to be considered the extent of his application ? Is it to expose himself to the possible conviction of a charge of which he has been acquitted, or is it to relieve himself of the one of which he has been convicted ? It would seem that a bare statement of the proposition was sufficient to furnish the proper answer. It is not in accordance with the principles of human conduct for a person to ask a further trial of a charge of which he has already been found guiltless by a verdict of a jury. But he seeks deliverance from one of which he has been convicted, and hence he asks that he may again be put upon trial for this charge. In this case the defendant was expressly acquitted of the charge of murder upon the first trial, and convicted of a lower crime. He asked for, and obtained a new trial. A new trial of what ? Of the charge of which he had been convicted, or the one of which he had been acquitted ? Is it reasonable to suppose that the defendant asked for another trial in order to determine whether he had committed the crime of murder, or was it merely to determine whether he was guilty of manslaughter in the second degree, of which he stood convicted ? The answer would seem to be plain upon the principle that it was the latter charge alone that he asked to have retried, and that his application for a new trial should be held

to apply to this and not to the higher crime of which he was acquitted. And this is in accordance with the great weight of judicial opinion upon this subject. Most of the authorities are referred to in the arguments of the attorney general and of the counsel for the defendant, and "with two or three exceptions, they concur in the doctrine that the effect of a new trial in such cases, is only to subject the party to a trial for the offense of which he has been convicted; and that the verdict of acquittal remains unaffected." *State v. Rofs*, 29 Mo., 32–42. Mr. Bishop in his work on criminal law states the rule very clearly as follows:

"The waiving of a constitutional right, implied in the making of an application for a new trial, is not construed to extend beyond the precise thing concerning which the relief is sought. If therefore the verdict finds a prisoner guilty of a part of the charge against him, and not guilty of another part, as, for example, guilty on one count of the indictment, and not guilty on another count; or there being one count, guilty of manslaughter, and not guilty of murder; and a new trial is granted him — he cannot be convicted on the second trial, of the matter of which he was acquitted on the first." (1 Bishop Crim. Law, 4th ed., section 849.) In accordance with this and other authorities to the same effect, I therefore think the defendant by applying for and obtaining a new trial is not to be held to have waived all the advantages of the verdict acquitting him of the higher crime, but that so far as that offense is concerned he may claim the benefit of the constitutional provision which declares that "no person for the same offense shall be put twice in jeopardy of punishment." Art., 1, § 8, Const., Wis. It is however contended that there is some inherent difficulty in the application of this rule of law to the case before us, growing out of the entirety of the verdict. Here, it is said, there is but one crime charged, in one count of the indictment, and but one defendant, and that consequently if that part of the verdict which found him guilty of manslaughter in the second degree is set aside, *ex*

*necessitate*, that portion acquitting him of murder must share the same fate."

It is very familiar doctrine that upon this indictment for murder in the first degree, the defendant might, in the first instance, have been convicted of any lesser grade of homicide, because the less offense is included in the greater. When there are several counts in the indictment, and the defendant is found guilty on one and acquitted on the others, there is no difficulty in confining the new trial to the count upon which he was convicted. So it is obvious, on an indictment for murder, the attention of the jury may readily be confined to the charge of manslaughter in the second degree, even where there is no count charging that offense, if the defendant was convicted of that crime on the first trial. There is no more difficulty in giving effect to the verdict of acquittal in the one case than in the other. What substantial reason is there for holding, that because there is only one count in the indictment, and the defendant is convicted thereon of a less offense, than that principally charged, by applying for and obtaining a new trial he exposes himself to the whole charge, while the rule is, that where there are different counts in the indictment, upon some of which the defendant is acquitted on the new trial, he is not liable to be tried on the whole indictment, but only upon those counts upon which he was first convicted? There is no valid ground for making a distinction in the two cases. "The granting of a new trial, on conviction of one offense, has no connection with the verdict of acquittal of others, and the latter may well be allowed to stand and have effect though the former should be set aside." *Lesslie v. State*, 18 Ohio, S. R., 390–395. The first verdict, in the present case, need not necessarily be treated as a unit or one entire thing, but as several in its nature, acquitting the defendant of the charge of murder and convicting him of manslaughter in the second degree. What inherent difficulty is there in so regarding it and attaching to it all the legal consequences incident to this view of the matter?

When several persons are charged in one indictment with the same offense, and there is a verdict acquitting some and convicting others, there is no pretence that the verdict is such an entire thing that it cannot be set aside as to those convicted without vacating it as to those acquitted. And it seems to me there is really no difficulty in treating the first verdict in the present case as one acquitting the defendant of the charge of murder, and that this portion of it remains in force, notwithstanding the fact that he moved for a new trial and obtained it. Such motion for a new trial could only properly apply to the inferior crime of which he had been convicted. And the verdict for the purpose of determining what offense the defendant can constitutionally be a second time tried for, must be treated as divisible in its nature.

But again, it is insisted by the attorney general that the defendant cannot have the benefit of the acquittal of murder on the first trial, because he did not plead and offer evidence of the same on the second trial. To this objection the counsel for the defendant answers that it is never necessary to plead or prove that which appears upon the face of the record in the case itself; that the defendant had no opportunity to plead the acquittal, because he was re-tried on the issue first formed without any second arraignment; and that if the defendant lost the benefit of the former acquittal by reason of not being arraigned and not pleading, it was the fault of the prosecution, which failed to arraign him.

Whether it would have been proper practice to arraign the defendant the second time, and have him plead to the indictment, we shall not stop to inquire. It is sufficient to say that the defendant was not arraigned, and therefore could not plead the former acquittal. And in order to have the protection afforded by the constitutional provision, he must have the benefit in some way of the proceedings upon the first trial. If there was any fault it was certainly that of the state in omitting to arraign him a second time, so that he might plead the ver-

dict of acquittal. As the case now stands, it would be most unjust to deprive him of all benefit of that verdict. An examination of the cases will show that sometimes there was a plea setting up the former acquittal of the higher crime as a bar to any further prosecution for that grade of offense, while in other cases no such plea was interposed. There is no settled practice upon the point, and it is surely in accordance with the dictates of reason and the spirit of the constitution to permit the defendant to avail himself of the verdict acquitting him of murder, under the circumstances of this case.

Another question submitted by the circuit judge was this:

"Was it proper to allow any part of a certain paper writing, purporting to be the deposition of Derrick West, to be read in evidence on the second trial, and if so, should not the whole of it have been read, the defendant objecting to the reading of said deposition, but not specially claiming that all of it, if any, should be read?"

The circumstances under which this deposition was taken show that the portion read to the jury was clearly admissible as the dying declarations of the deceased. Derrick West, when he made and signed the statement relating to the time and manner the fatal blow was inflicted, seems to have been fully conscious of his condition, and that he had but a short time to live. It appears that the first part of the deposition was dictated to Justice Talles (who wrote it down) by the witness James Dawson, who was with the deceased at the house of Dr. Martin, when the stabbing occurred. It was all, however, read over to West, and he assented to its correctness. Indeed, the material part of the deposition was dictated to the justice by the deceased himself, and the whole seems to have been adopted by him as a correct history of the facts attending the homicide. This being so, we think there was no error in permitting the deposition to be read in evidence, as the dying declaration of the deceased. Such declarations have been held to be admissible in evidence in cases of homicide. *Miller v. The*

*State*, 25 Wis., 384.. Perhaps the defendant might have insisted upon the trial that the whole deposition should be read to the jury — if any of it was — in order that the jury might have the whole statement, and thus weigh its value. But it appears that he did not specially claim that this should be done, and only objected generally to the reading of any portion of the deposition in evidence. Therefore probably the circuit court thought only the material portion which had been dictated to the justice by the deceased himself, should be read to the jury. But under the circumstances we think there was no error in the rulings of the court upon this point.

The three next questions propounded by the circuit judge may be conveniently considered together. They arise upon certain instructions asked on the part of the defendant, which the court refused to give, except so far as they were covered by the general charge. These instructions were as follows:

1st. Every man, and especially in his own house or home, has a right, when assailed, to defend himself, even to slaying the assailant, if that is necessary, or at the time reasonably appeared to be necessary, to defend himself and preserve himself from serious bodily harm.

2d. If the deceased West, after challenging the defendant to go out of the house, seized the defendant for the purpose of taking him out of the house, under circumstances creating a reasonable probability that he intended to do him a serious bodily harm, the defendant was justified in defending himself with any degree or manner of violence necessary to his defense, and necessary to prevent West from dragging him out of the house, even to taking the life of West, if necessary, for that purpose."

3d. "That a man's own house or home is sacred — is his sanctuary from lawless violence; and when a man in his own home is assailed or assaulted and challenged, and refusing to go, the assailant seizes him for the purpose of dragging him out of doors,

for the purpose of doing him serious bodily harm, he may resist such attempt even to slaying the assailant."

In the general charge, the court instructed the jury as to the right of self-defense in substance as follows:

When a person is attacked or menaced with an immediate attack by another who is in striking distance and has the means and ability to at once execute it, the person attacked or thus menaced may act upon what are then the appearances of the degree of violence used or threatened, and may graduate the force of his resistance to the apparent nature of the attack, and if he acts in good faith upon what are then the appearances of the nature of the attack he will be justifiable, though such appearances subsequently prove unreal. And that to render the killing of the deceased justifiable the jury must find affirmatively three things; 1st, that the defendant had been attacked or was menaced with an immediate attack by the deceased and was acting in self-defense; 2nd, that the appearances of the attack made or threatened were such as to give the defendant a reasonable ground to apprehend a design to do him some great personal injury; 3d, that from the appearances of the attack made or threatened the defendant had reasonable cause to believe there was imminent danger of such design being accomplished. And further, as to the extent of the right of self-defense, when a person is assaulted in his dwelling, the court charged that if the jury found that the deceased West was lawfully in the house, had entered peaceably and on business, and had not been ordered to leave the house previous to the affray, that the affray which ensued was wholly personal between the defendant and the deceased and did not involve any violence or attempted or intended violence to the dwelling or property or family of Dr. Martin or the defendant, that then the defendant could only be justifiable under the same circumstances that would justify him had the affray not occurred in the house, with the exception that the defendant would not be obliged to retreat in his own house, but if attacked might stand

his ground and defend himself with all the force necessary, even to the taking of life if that should appear necessary to protect him from great personal injury.

Now it is urged on the part of the defendant, that by refusing to give the above instructions requested by him and in giving his general charge, the circuit judge denied the right of a man to defend himself from an assault made upon him in his own house, and in the presence of his wife and mother in a case where such defense would not be equally justifiable in the street or upon any other neutral ground, with the exception that when a man was so attacked in his own house, the jury were told that he was not obliged to retreat to the wall before defending himself. It is said that this is unreasonably restricting the right of self-defense in a case where a person is assailed in his own house. That right it is claimed is peculiarly sacred there in defense of one's person and house, so much so that a man has the right to repel in his dwelling all manner of violence and abuse, and that even mere words there, may justify an assault.

It will, however, be seen that the jury were instructed if the deceased was lawfully in the house, having entered peaceably for the transaction of business, and had not been ordered to leave previous to the affray; and if the affray which ensued was wholly personal between him and the defendant, and did not involve any violence, or attempted or intended violence to the dwelling or property or family of Dr. Martin or the defendant, that then the defendant could only be justifiable under the same circumstances had the affray occurred elsewhere, with the exception that if the defendant was attacked he was not obliged to retreat, but might stand his ground and defend himself with all necessary force, even to the extent of taking life whenever that was necessary to protect himself from great personal injury. It seems to me that this was giving the substance of the instructions asked on the part of the defendant, and that the difference between those instructions and the propositions of law as charged, is more fanciful than real. The court told the

jury that a man assaulted in his own house need not retreat, but might use any degree of force or violence necessary for his protection. But here, as in other cases, mere words of abuse would not justify the taking of human life. And it is not seriously claimed that they would. It is obvious from these remarks that the court fairly instructed as to what circumstances would justify the taking of human life, and we are therefore of the opinion, that there was no error in refusing the above instructions, when we take into consideration this charge upon the same subject.

The further questions submitted for our opinion are in effect answered in the negative by what has been already said. The district attorney requested, and the court so charged, that if the jury found from the evidence that the deceased only intended an assault and battery upon the defendant; or that he intended to engage in a personal encounter with him and did not intend any personal violence upon the defendant unless the latter voluntarily chose to engage in such encounter, but that nevertheless the defendant sprang after the deceased and without further provocation stabbed and killed him, then such killing was not a justifiable but a criminal homicide. And also that mere words, however violent, unaccompanied by overt acts, could never furnish a justifiable cause for an attack.

There was no error in giving these instructions, when considered in connection with the general charge upon the same subject.

This disposes of all the questions submitted for our decision.

The cause must be certified back to the circuit court of Walworth county, with our decision upon the questions submitted.

*By the Court.*—So ordered.