[No. 20625.　Department One. — June 17, 1890.]

<div style="float:right">
84　573<br>
119　508<br>
84　573<br>
131　233
</div>

# THE PEOPLE, RESPONDENT, *v.* ANDREW CLARK, APPELLANT.

CRIMINAL LAW — HOMICIDE — SELF-DEFENSE — CONFLICTING EVIDENCE — PROVINCE OF JURY. — When the evidence is conflicting as to whether a defendant convicted of murder acted in self-defense or not, the jury are the sole judges of the credibility of the witnesses whose testimony tends to establish either position, and their verdict cannot be disturbed upon appeal, if no error is shown in the rulings of the court.

ID. — EVIDENCE — OPINION OF WITNESS — EFFECT OF MIXING CATTLE — PROVINCE OF JURY. — A question as to whether the mixing of his own cattle by the deceased with those of the defendant upon government land occupied by defendant was not apt to give rise to trouble or dispute, is objectionable, as calling for an opinion or inference which the jury alone were competent to form upon or infer from the facts in evidence.

ID. — ATTEMPT OF DEFENDANT TO PREVENT MIXING OF CATTLE — REJECTION OF EVIDENCE — ERROR CURED. — When the court sustains an objection to a question as to whether the defendant at the time of the homicide was attempting to prevent the deceased from mixing his cattle with those of defendant, the error, if any, is cured by permitting an answer that the defendant appeared to be trying to keep the deceased from driving his cattle in that direction.

ID. — EXPERT EVIDENCE — POWDER-MARKS — DISTANCE OF DECEASED FROM DEFENDANT. — When there is a material inquiry as to the distance of the deceased from the defendant at the time of the homicide, as bearing upon the question whether deceased was near enough to strike the defendant, and whether the shooting was in self-defense, and it appears in evidence that no powder-marks were found upon the clothing or body of the deceased, it is proper to allow expert testimony for the prosecution as to the farthest distance at which clothing could or would be powder-marked with a rifle such as was used by defendant.

ID. — IMMATERIAL EVIDENCE — FORMER TRESPASS OF DECEASED — CONSPIR-ACY — OFFER OF EVIDENCE. — A former trespass of the deceased upon defendant's leased land would not justify the defendant in killing the deceased, and evidence of such trespass is properly rejected, in the absence of any offer to connect it with other evidence that would tend to establish a conspiracy to drive the defendant off from the land occupied by him.

ID. — INSUFFICIENT EVIDENCE OF CONSPIRACY — THREATS. — Evidence that a witness had been instructed by deceased to drive the sheep of deceased upon the claim rented by defendant, and had informed deceased that defendant had rented the claim, and did not want the sheep driven upon it, is irrelevant and immaterial, and does not tend to show a conspiracy to drive defendant from the claim, or that deceased had made a threat against defendant.

ID. — REBUTTAL OF GUILTY FLIGHT. — When the testimony of the prosecution does not tend to establish a guilty flight, and there is no claim made by the prosecution that it does so tend, the defendant cannot give evidence to account for his rapidly riding off from the place of the homicide.

ID. — ANIMUS OF DEFENDANT TOWARDS STEP-SON OF DECEASED — EXPLAINING HOSTILE REMARK. — Evidence relating to the animus of the defendant toward a step-son of the deceased is irrelevant, and it is not error to refuse to permit defendant to explain whether he intended for a joke certain hostile remarks which he testified he had made concerning such person.

ID. — PERMITTING REPETITION OF EVIDENCE — DISCRETION. — It is within the discretion of the trial court to permit a witness for the prosecution in rebuttal to testify to what he had testified to before on his examination in chief for the prosecution, and such discretion is properly exercised if the court cannot recall, at the time, whether the question calls for the repetition of his former testimony, or not.

ID. — MODIFICATION OF INSTRUCTIONS — AUTHENTICATION UPON APPEAL. — In order to be reviewed on appeal, the modification of instructions requested by either party in a criminal case must be shown, either by the indorsement of the judge thereon, or by a bill of exceptions. The clerk cannot give verity to what purports to be instructions given or refused, or to modifications thereof unauthenticated by the judge.

ID. — DISCREDITING WILLFULLY FALSE WITNESS — "DISCREDIT" SYNONYMOUS WITH "DISTRUST." — It is not error to instruct the jury that if they believe any witness has *willfully* testified falsely to any material fact, it is their duty to *discredit* him. The verbs "discredit" and "distrust" have substantially the same meaning.

ID. — OMISSION OF LIMITATIONS IN SEPARATE INSTRUCTIONS — CONSTRUING INSTRUCTIONS TOGETHER. — Objections that certain instructions, considered separately, do not contain the proper limitations and conditions required by the facts, are obviated, if all the instructions, read and considered together as one charge, without straining the language, show a fair, harmonious, and correct statement of the law applicable to the facts of the case, and contain all the conditions and limitations omitted from the instructions complained of.

APPEAL from a judgment of the Superior Court of Mendocino County, and from an order denying a new trial.

The facts are stated in the opinion.

*T. L. Carothers,* and *Henley, Swift & Rigby,* for Appellant.

*Attorney-General Johnson, J. Q. White,* and *J. A. Cooper,* for Respondent.

GIBSON, C. — The appellant, Clark, who was charged
with the commission of the crime of murder, and was
convicted of murder in the second degree, brings this
appeal from the judgment, and an order denying a new
trial.

At the trial the defendant admitted that he killed
Garret Fitzgerald, but endeavored to show that he did it
in necessary self-defense.  The evidence discloses that
the homicide took place in the mountains of Mendocino
County, where both the defendant and the deceased were
engaged in stock-raising.  The deceased, with his son,
step-son, and another man, were driving a band of about
two hundred cattle upon or near a tract of land claimed
by the defendant, upon or near which the defendant's
cattle were then grazing.  The defendant, who came up
with another man, endeavored to prevent the cattle from
being mingled, and said he had a claim there, and would
not permit Fitzgerald's cattle to be driven on it.  A
quarrel between the defendant and Fitzgerald thereupon
followed, from which the other men held themselves
aloof, except as hereinafter stated.  The defendant and
the deceased were on horseback at the time; the defend-
ant was upon the better horse, and had a Winchester
rifle, and the deceased had a stick weighing about twenty
ounces, which he was, when interrupted by defendant,
using in driving his cattle.  The deceased advanced
upon the defendant three times, brandishing his stick in
a threatening manner; from each advance the defendant
retreated, and at the same time pointed his rifle at the
deceased and called upon him to stop.  During the whole
time they were using scurrilous language toward each
other.  Between the second and third advance the de-
ceased made, he turned around to his son and step-son
and asked each for a pistol, but did not obtain one.  The
testimony of the prosecution tended to show that the
third time the deceased made an advance in a threaten-
ing manner he stopped within about fifteen feet of the

defendant, upon the latter pointing his rifle at him and commanding him to stop, and that after he had come to a full stop, and was at a safe distance from the defendant, the latter deliberately shot him through the left breast, and then rode away, but afterward returned and got the stick the deceased had threatened to use. And it further tended to show that the killing was done upon government land. While the testimony on the part of the defense tended to prove that the deceased, on his third advance upon the defendant, did not heed the command of the latter to halt, but rode rapidly toward him, and when they had come together, the deceased struck at defendant with his stick and missed him, but struck the defendant's horse in front of the saddle; and upon lifting the stick to strike a second blow, the defendant raised his rifle and shot him; that each time the deceased rode toward the defendant, the son and step-son of deceased would ride up a certain distance, but took no further part in the difficulty; and that the killing was done upon the claim of one Bainbridge, of whom the defendant had previously obtained a lease of it for the season then current.

The jury were the sole judges of the credibility of the witnesses, whose testimony tended to establish either of these positions. They might have based their verdict upon the position assumed by the defendant; but they having found that of the prosecution to be the true one, the verdict cannot be disturbed, unless some of the causes urged by the defendant for a reversal can be sustained.

The following rulings on the evidence are assigned as errors: The son of the deceased, who had testified in chief that he was helping his father drive his cattle, and that they were being driven in the direction of a place where the defendant had some cattle, was asked this cross-question: "Well, is it desirable, — is it not apt to give rise to trouble or dispute or embarrassment in

mixing cattle together that way?" To which an objection was sustained, upon the ground, among others, that it called for the opinion of the witness. This question was propounded upon the theory, which the defendant claims he tried to show at the trial, that the deceased, with his son and step-son, conspired together to drive him, by violence and intimidation, from the mountains, because he was pasturing stock upon land which they had used for the same purpose before he came, and was thereby limiting their stock range, and that the cattle of deceased were about to be mingled with those of the defendant, to provoke a difficulty. We think the court ruled correctly in sustaining the objection, on the ground stated. The question called for an opinion or inference, which the jury alone were competent to form upon or infer from the facts in evidence.

Subsequently, and during the cross-examination of the same witness, the following question was propounded: "Did not you know that Clark was endeavoring to prevent these two bands of cattle from mixing?" to which the prosecution objected, upon the same grounds as to the preceding one. The court sustained the objection, and at the same time said: "He can state what he said and what he was doing." If this ruling was erroneous, it was cured by the answer of the witness, who said: "It looks very much like Clark was trying to keep us from driving the cattle down in that direction. He got ahead of our cattle."

The ruling next objected to is one admitting the testimony of Charles Yates, who said he had experimented with a Winchester rifle, forty-four caliber, and found that fifteen feet was the farthest distance it would powder-mark clothing when discharged at such clothing. The objection to this testimony was, that it was immaterial and incompetent. The rifle used by the defendant upon the deceased, who was in his shirt-sleeves, without coat or vest on at the time, was a Winchester, forty-four caliber,

and that no powder-marks were found upon the clothing or body of the deceased after being shot does not appear to have been disputed.   It was therefore material and competent, as tending to show, as claimed by the prosecution, that the shooting occurred while the defendant and deceased were at a distance of about fifteen feet from each other, and not, as claimed by the defense, that it occurred while they were within a few feet of each other, and near enough for the deceased to strike the defendant with his twenty-ounce stick.   This same witness afterward testified that his experiments showed that powder-marks would appear upon clothing when fired at from a distance of ten feet.   And another witness who was familiar with the use of fire-arms, and had experimented in other cases, said: " From my experience, and from what I have done, I can testify as a fact as to how far a forty-four caliber Winchester, loaded with ordinary shell, will powder-mark clothing.   It depends upon the color, so far as that is concerned; it shows plainer on light clothing; I think it will powder-burn at eight feet on dark clothing or any kind of clothing; it shows a foot or two farther on light clothing; it shows eight feet on dark clothing."

When Bainbridge, from whom the defendant leased the claim for pasturage purposes, was being examined in chief for the defendant, the following occurred:—

" Q.  Do you know whether or not any of Kelly's cattle, any of Fitzgerald's cattle, had ever been driven over on your claim before that?  A.  Yes, sir.

" Q.  When?

" We object as not material."

The objection was sustained.   The ruling was, we think, correct.  A former trespass upon defendant's leased land, it is clear, would not justify him in killing the deceased.   If the testimony was intended to prove that it was an act done in furtherance of the conspiracy above mentioned, there was no offer to connect it with other

evidence that would tend to establish such a conspiracy. The defendant having failed to make such an offer, the evidence, which was apparently immaterial, was properly rejected. (See *McGarrity* v. *Byington*, 12 Cal. 426.) Again, when the defense had reached its side of the case, it tried, for the same purpose and also to show threats by the deceased, to elicit from W. Hoxie, a witness for the defense, that, prior to the killing, the witness had been instructed by the deceased to drive the sheep of the latter upon the Bainbridge claim, and that witness thereupon told the deceased that he had been informed by Clark, the defendant, that the latter had rented the claim and did not want the sheep driven on it. The court excluded this as irrevelant and immaterial.

The counsel for the defendant, however, said to the court that he desired to explain why he offered it, but the court declined to hear it, saying that it was satisfied that it had ruled correctly. We see no error in this ruling. The evidence was irrevelant; it did not tend to establish the conspiracy alluded to, nor did it show any threat against the defendant. The same witness subsequently said that on the occasion referred to the deceased made no threat against Clark. The court seems to have admitted all the evidence offered in the case that tended to show threats by either the defendant or the deceased against the other. It may be well to remark, in passing, that the evidence, viewed as a whole, and in the most favorable light for the defendant, does not show any conspiracy between the deceased and his son and step-son. The first was the sole owner of the cattle, and the others were employed by or were gratuitously assisting him in herding them.

During the re-examination of Bainbridge for the defense, an objection on the ground of irrevelancy and immateriality was sustained to the following question: "Did Mr. Clark go to Round Valley as fast as he could to the officers?" The defendant claims he should

have been permitted to prove the fact called for, in order to meet the injurious effect of the testimony of the step-son of the deceased, which tended to show a guilty flight on the part of the defendant. On this point that witness said: "On the day of the homicide, in addition to those that I have already mentioned, I saw Frank Knight. He was about seventy yards away. I saw no one else. I did not see Archie McCauley nor Bainbridge; I know both of them. Clark said nothing after the shooting, but rode away. He did not stop to assist in taking care of Fitzgerald; he turned his horse around and looked at him and rode off. . . . . After the killing, Clark rode back and got the stick."

This testimony did not tend to establish a guilty flight, nor was there any claim made by the prosecution that it did; therefore, under the rule that a defendant cannot give evidence to account for his flight unless the prosecution prove the flight as tending to show his guilt (Wharton on Criminal Evidence, 9th ed., sec. 752), the ruling must be sustained. Beside, the defendant in his testimony gave substantially the same account of how he rode away and afterward returned for the stick.

The defendant, in his testimony, said that, some time before the difficulty, while he was driving his cattle up into the mountains, he met a Mr. Masterson with his flock of sheep, and they had a conversation regarding his (defendant's) experience in the mountains, wherein he said to Masterson: "I told him Billy Kelly had stole one from me, but I expected to prosecute him when I got over there, to beat him through the law; if I could not beat him that way, I would beat him at his own game,—I would steal two for one; that was just the remark that was made." He was then asked: "Was this conversation about stealing two for one,—I will ask you if it was intended for a joke?" An objection of the prosecution to this question was, it is urged, erroneously sustained.

Even assuming that the defendant meant what he said to Masterson respecting Kelly, who is the person referred to herein as the step-son of deceased, it could only have, at most, shown the defendant's *animus* toward Kelly, which was clearly irrelevant.

The last objection to the rulings of the court upon the evidence is to that where the court permitted the witness Masterson, in rebuttal, to repeat a portion of what he had testified to upon his examination in chief for the prosecution. This was a matter that was within the discretion of the court, which we think was properly exercised in admitting the testimony, especially as the court said it could not recall, at the time, whether it called for a repetition of his former testimony or not.

Certain exceptions to the instructions were reserved. It is contended that the court erroneously modified the eleventh and twelfth instructions given to the jury at defendant's request. The only way in which these modifications are attempted to be shown in the record is by the repetition of the last sentence of each instruction below the signature of the trial judge to each of the instructions, without any indorsement of the trial judge on either of the sentences to show whether he added them to the instructions under which they respectively appear. The action of the trial judge in modifying instructions requested by either party to be given to the jury must be shown either by his indorsement thereon or by a bill of exceptions. (Pen. Code, sec. 1176; *People* v. *Thompson*, 28 Cal. 218; *People* v. *Martin*, 32 Cal. 91; *People* v. *Tetherow*, 40 Cal. 287; *People* v. *January*, 77 Cal. 179.) Hence the modifications complained of not having been shown in either way, the defendant cannot avail himself of them on this appeal. Furthermore, an examination of a certified copy of the instructions complained of, filed in this court by the respondent, does not disclose either of the sentences referred to that appear in the printed record here. They must, therefore, have been inserted

by the clerk of the trial court under a misapprehension of what constituted the record on appeal under section 1246 of the Penal Code. It is clear, as was said in *People* v. *January, supra:* "The clerk cannot give verity to what purports to be the instructions given or refused by inserting them in the judgment roll. He is not in a position to know at all times what action the court has taken; and were it otherwise, the power of verification is not, and should not, for many and weighty reasons, be vested in him."

But although the modifications cannot be reviewed for the reasons stated, we shall see, however, when the instructions are considered as a whole, that the modifications did not make the instructions erroneous.

The court, in addition to the instructions given at the request of the prosecution and the defense, gave certain instructions of its own, among which is the following:—

"If you believe that any witness has willfully testified falsely to any material fact, it is your duty to discredit him. Now, I emphasize the word '*willfully*'; a witness may by mistake testify falsely to a material fact, and you should not certainly discredit him if you believed it to be a mistake; if he intentionally and willfully testified falsely to a material fact, you may disbelieve and disregard his evidence entirely. In making these remarks I do not mean to be understood that any witness has testified falsely; it is for you to say."

This instruction is excepted to because the word "discredit" is used instead of the word "distrust." By the use of the word "discredit," appellant claims the jury, in effect, were told it was their duty to discard the evidence of any witness whom they believed had testified falsely to any material fact.

The verbs "discredit" and "distrust" have substantially the same meaning. (See Webster's Dict.; Anderson's Law Dict.; Abbott's Law Dict.) Read in this light, the instruction complained of is, in effect, a compliance with

section 2061, subdivision 3, of the Code of Civil Procedure, which provides "that a witness false in one part of his testimony is to be distrusted in others." By it, the jury were told that if they believed that any witness had willfully testified falsely to any material fact, that it was their duty to regard such false testimony as sufficient to impeach and render less credible other portions of his testimony, and that they *might* disregard the testimony of such a witness altogether. That the jury have an undoubted right to reject all the testimony of such a witness in a proper case, necessarily follows from requiring them to distrust it. (*People* v. *Sprague*, 53 Cal. 491.)

The remaining exceptions to the instructions are urged upon the ground that the instructions to which they severally relate do not contain the proper limitations and conditions required by the facts. But while some of the instructions may be defective in this respect, all the instructions, read and considered together as one charge, without straining the language, show a fair, harmonious, and correct statement of the law applicable to the facts of the case, and contain all the conditions and limitations that are omitted from the instructions complained of. This has been repeatedly held to obviate the objections mentioned. (*People* v. *Dovell*, 48 Cal. 93; *People* v. *Nelson*, 56 Cal. 77; *People* v. *Gray*, 61 Cal. 164; 44 Am. Rep. 549; *People* v. *Morine*, 61 Cal. 367; *People* v. *Hurtado*, 63 Cal. 288.)

We are unable to perceive anything in this case that would justify a reversal, and therefore advise that the judgment and order be affirmed.

BELCHER, C. C., and VANCLIEF, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.

Hearing in Bank denied.