[Crim. No. 697.   In Bank. — November 5, 1901.]

THE PEOPLE, Respondent, v. GONZALES SMITH, Appellant.

CRIMINAL LAW — HOMICIDE — ACQUITTAL OF MURDER — TRIAL FOR MAN-SLAUGHTER — PEREMPTORY CHALLENGES TO JURY. — A defendant charged with murder, and convicted of manslaughter, is acquitted of murder, and where the conviction of manslaughter is reversed upon appeal, a second trial can only be had upon the charge of manslaughter, and the defendant in entitled upon such trial to no more than ten peremptory challenges to the jury.

ID. — IMPEACHMENT OF PROSECUTING WITNESS — CONTRADICTORY PRIOR TESTIMONY — EXPLANATION — CHARACTER OF DEFENDANT. — A prosecuting witness may be impeached by the defense by proving that his evidence was contradictory to that given at the inquest and the preliminary examination; but the prosecution has an equal right to prove his explanation thereof, to the effect that, knowing the character of the defendant and his brother, he was afraid to testify against them. The defendant cannot complain that the explanation incidentally involved an attack upon his character.

ID. — EXPRESSION OF JUDGE — COMPETENCY OF TESTIMONY. — An expression of the judge in allowing the witness to explain his former evidence, " I think the testimony is all right," imports only that the testimony was competent and admissible, and could not be understood by the jury as intimating that, in the opinion of the judge, the witness was telling the truth.

ID. — ARGUMENT OF COUNSEL — IMPROPER REMARKS — REBUKE AND INSTRUCTION BY JUDGE. — Where, upon the argument of special counsel for the prosecution, highly improper remarks were made, involving a wish that the defendant had thrown down the bars, so that the prosecution might have proved his character, and the court rebuked the counsel, and instructed the jury not to consider the question of the defendant's character, the misconduct was not so serious as to call for a reversal of the judgment.

ID. — EVIDENCE — THEORY OF SUICIDE — POWDER-MARKS ON HAT — CROSS-EXAMINATION — EXHIBITION OF HAT NOT IDENTIFIED. — Where the defense, in order to corroborate a theory of suicide by the deceased, called a witness to show that there were powder-marks on the hat worn by the deceased at the time of the shooting, it was proper for the prosecution, on cross-examination, for the purpose of showing that the witness was no judge of powder-marks, to exhibit to the jury the marks on any hat thought by the witness to bear powder-marks, though not identified nor offered in evidence.

ID. — TECHNICAL ERROR IN INSTRUCTION — SELF-DEFENSE INAPPLICABLE. — A technical error in instructing the jury that displaying of a deadly weapon in a rude, angry, and threatening manner, in the .

presence of two or more persons, is a criminal offense, omitting the essential qualification that it was not done in necessary self-defense, is not ground of reversal, where self-defense was wholly foreign to the case, on all the evidence.

APPEAL from a judgment of the Superior Court of Kern County and from an order denying a new trial. J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

Laird & Packard, and J. W. Ahern, for Appellant.

Tirey L. Ford, Attorney-General, for Respondent.

BEATTY, C. J.—The defendant was accused by information of the crime of murder, and by the verdict of a jury found guilty of manslaughter, upon which verdict a judgment was duly entered. On appeal, this court reversed that judgment and remanded the cause for a new trial. (*People* v. *Smith*, 121 Cal. 355.) Upon the next trial, defendant was again convicted of manslaughter, and he has again appealed. When the cause came on for trial the last time, the defendant, after having challenged ten jurors peremptorily, attempted to interpose another challenge of the same character, to which the people objected that he was entitled to no more than ten such challenges.

The ruling of the court sustaining this objection stands first among the various assignments of error that have been argued in support of the present appeal, and will be first considered. The defendant's contention is, that inasmuch as he was charged by the information with the crime of murder, he was, by the express terms of the statute, allowed twenty peremptory challenges. It is true that section 1070 of the Penal Code does provide that if the offense charged be punishable with death or imprisonment for life, the defendant is entitled to twenty peremptory challenges, and it is true that the crime of murder is punishable with death or imprisonment for life, so that the question is, whether, at the time this eleventh peremptory challenge was interposed, the defendant stood charged with the crime of murder,—whether, in other words, he was on trial for murder; whether the jury about to be sworn could convict him of the crime of murder on the information as it then stood. The information had, as above stated, originally charged the

crime of murder, which, of course, included a charge of the lesser grade of homicide, — manslaughter. But the verdict and judgment convicting the defendant of manslaughter was, in legal effect, an acquittal of the crime of murder, and eliminated that part of the charge from the information, leaving only the accusation of manslaughter pending, and when a new trial was ordered by this court, it was only a new trial of the pending issue that was intended, and its only effect was to subject the defendant to a new trial on the charge of manslaughter. The authorities everywhere support these views, as do the former decisions of this court. (See *People* v. *Gilmore*, 4 Cal. 376;[1] *People* v. *Backus*, 5 Cal. 275; *People* v. *Apgar*, 35 Cal. 389; *Campbell* v. *State*, 9 Yerg. 333;[2] *Jones* v. *State*, 13 Tex. 168;[3] *Baker* v. *State*, 4 Tex. App. 232; *Cheek* v. *State*, 4 Tex. App. 448; *Robinson* v. *State*, 21 Tex. App. 162; *Parker* v. *State*, 22 Tex. App. 107; *Bell* v. *State*, 48 Ala. 684;[4] 1 Bishop's Criminal Procedure, sec. 1271; *Atkins* v. *State*, 16 Ark. 568; *Johnson* v. *State*, 29 Ark. 34;[5] *Brennan* v. *People*, 15 Ill. 511; *State* v. *Tweedy*, 11 Iowa, 350; *State* v. *Boyle*, 28 Iowa, 526; *State* v. *Clemons*, 51 Iowa, 275; *Hurt* v. *State*, 25 Miss. 378;[6] *Morris* v. *State*, 8 Smedes & M. 762; *State* v. *Ross*, 29 Mo. 48; *State* v. *Jenkins*, 36 Mo. 372; *State* v. *Brannon*, 55 Mo. 63;[7] *State* v. *Martin*, 30 Wis. 216;[8] *Lithgow* v. *Commonwealth*, 2 Va. Cas. 297; *Stuart* v. *Commonwealth*, 28 Gratt. 953.) Upon these authorities, and many others that might be cited to the same effect, it is clear that the superior court did not err in holding that, upon the record before it, the defendant stood charged only with the crime of manslaughter, and that he was entitled to no more than ten peremptory challenges.

To a correct understanding of several of the points remaining to be considered, a brief statement of the circumstances of the killing is necessary. The deceased — Bencomo — was killed by a bullet fired from a pistol belonging to the defendant, and the only controversy upon the facts was as to whether the shooting was done by the defendant or by Bencomo himself. Bencomo was the husband of defendant's sister. Defendant testified that they were good friends; that at Bencomo's request he loaned him his pistol to take to his camp, and that

---

[1] 60 Am. Dec. 620.     [5] 21 Am. Rep. 154.
[2] 30 Am. Dec. 417.     [6] 59 Am. Dec. 225.
[3] 62 Am. Dec. 550.     [7] 17 Am. Rep. 643.
[4] 17 Am. Rep. 40.     [8] 11 Am. Rep. 567.

he, immediately afterwards shot himself. In this the defendant was corroborated by his brother, — one of the three witnesses who were present at the time of the shooting. According to the testimony of the other witnesses, — Mills and Tapia, — the defendant drew his pistol and immediately commenced firing in the direction of Bencomo, who fell to the ground and expired; that the defendant then placed the pistol by his side, and stated to those attracted to the scene that deceased had shot himself. All the witnesses agree that from three to five shots were fired. In this state of the case the effort of the defense was to show by cross-examination and impeachment of Mills and Tapia, that they did not and could not see what actually occurred. The witness Mills had testified at the coroner's inquest and at the examination before the committing magistrate that at the time of the shooting he was sitting on his horse, drunk and asleep, and, in effect, that he did not see who did the shooting. At the trial he was confronted with this evidence, which he admitted he had given. On his redirect examination he was asked by counsel for the people to explain the discrepancy between his testimony at the inquest and that given at the trial. The defense objected that the people had no right to ask the witness to explain. The objection was overruled, and the witness answered, in effect, that, knowing the character of the defendant and his brother, he was afraid at the time of the inquest to testify against them. The defense moved to strike out this answer, upon the ground that the defendant's character could not be attacked by the people, which motion was also overruled, and the rulings of the court with respect to this matter are assigned as error.

There was no error in these rulings. The defense had a right to impeach the witness by proving contradictory statements made by him at another time, but the state had an equal right to ask and the witness to give his explanation, and if the explanation incidentally involved an attack upon the character of the defendant, he cannot complain. In this connection the defense also took an exception to the language of the court in overruling their motion. The expression objected to was, "I think the testimony is all right." What the judge meant by this expression — and all that he could have been understood to mean, considering it in connection with what preceded and followed it — was, that the testimony was competent and admissible. The jury could not have under-

stood it as an intimation that, in the opinion of the judge, the witness was telling the truth.

Another exception to be noticed in this connection relates to a statement made by special counsel for the people in the course of his argument to the jury. He referred to the objection made to the testimony of Mills respecting the character of the defendant, and proceeded to say: "Happy, oh happy, would we have been had the defense thrown the bars down and allowed us to prove the character of this defendant." The court, without waiting for an objection from the defense, ordered counsel not to comment upon that matter, and, an objection being made, rebuked the counsel and instructed the jury not to consider the question of defendant's character. The remarks of counsel were, of course, highly improper, and called for a more severe reproof than the court administered; but in view of all the circumstances of the case, we cannot hold that the misconduct was so serious as to call for a reversal of the judgment.

To corroborate their theory of suicide, the defense endeavored to show that there were powder-marks on the hat worn by the deceased at the time of the shooting. The witness called to prove this fact testified that on the day after the homicide he saw a hat lying on the body of the deceased (then in charge of the defendant), and that it exhibited powder-marks. There was no other evidence that it was the hat worn by deceased at the time of the shooting, and the evidence was very unsatisfactory that the hat exhibited at the trial was the same hat seen by the witness on the following day. In this state of the case, the hat having been exhibited to the jury, but not formally offered in evidence, the defendant's witness was asked on cross-examination to point out to the jury what he called powder-marks. To this the defense objected, upon the ground that the hat had not been offered in evidence, and had not been identified. This was, under the circumstances, a rather singular objection to come from the defense, but if the circumstances had been different, the court would have been justified in overruling it. The witness had been called to prove powder-marks on Bencomo's hat, and the object of the cross-examination was to prove that he was no judge of powder-marks. For this purpose it was proper to show the jury any marks on any hat which the witness thought were powder-marks, in order that they might properly estimate the value of his observations

upon the hat which he saw the day after the homicide, and it was for this purpose that the court allowed the hat to be shown to the jury. What has been said in regard to this ruling of the court is a sufficient answer to the further objection made to the remarks of counsel for the people concerning the evidence in question in their argument to the jury.

The court modified several of the instructions requested by the defendant, by striking out portions thereof, and complaint is made of these rulings. It is true that some passages stricken out of the instructions might have been properly allowed to remain, but, in one instance at least, the unobjectionable matter was directly coupled with a statement wholly irrelevant to the case, and only likely to produce confusion; and in that as well as in every other instance, the matter stricken out was but a repetition, in substance, of instructions already given by the court of its own motion.

The case was a very simple one, and the only question the jury had to decide was, Who fired the fatal shot, — the defendant or the deceased? If the deceased shot himself, the defendant, of course, was innocent; but if he was shot by the defendant, there was no possible theory of the evidence upon which he could have been acquitted of manslaughter. Even if the killing was accidental, it amounted to involuntary manslaughter.

There was a technical error in instructing the jury that drawing and displaying a deadly weapon in a rude, angry, and threatening manner, in the presence of two or more persons, is a criminal offense. It is a part—and an essential part—of the definition of that crime that the drawing and displaying of the weapon must not be in necessary self-defense. The omission of that qualification in this instance was, however, of no consequence, because there was no pretense that the defendant had occasion to defend himself against the deceased or any other person. Self-defense was an element wholly foreign to the case, on the defendant's own evidence, and all the evidence.

This disposes of all the exceptions noticed in the argument of counsel for appellant, and we discover nothing more meritorious in any of the other exceptions appearing in the record.

The judgment and order of the superior court are affirmed.

McFarland, J., Van Dyke, J., Temple J., and Henshaw, J., concurred.

GAROUTTE, J., concurring. — I concur in the judgment. I have no doubt but that the defendant in this case could have been tried and convicted of murder under the information. In other words, if the trial court had held that the previous conviction for the crime of manslaughter was not an accquital of the charge of murder, and had proceeded to try the defendant again upon the original charge, then in such a case the defendant would have been entitled to twenty peremptory challenges. But here the court, during the impanelment of the jury, directly held that the defendant was only on trial for the crime of manslaughter. It necessarily followed that he was only entitled to ten peremptory challenges. It therefore appears by the record itself that the defendant was only *charged* — that is, defendant was only on trial — for an offense not punishable by death or imprisonment for life. –

For the foregoing reasons I concur in the judgment and order denying the motion for a new trial.