[Crim. No. 39. Third Appellate District.—July 10, 1907.]

## THE PEOPLE, Respondent, v. JOHN SOLANI, Appellant.

CRIMINAL LAW—MURDER—CONVICTION OF MANSLAUGHTER—RETRIAL FOR MURDER—JEOPARDY NOT PLEADED.—Where the defendant charged with murder was convicted of manslaughter, and on his appeal a new trial was granted, if he fails before the new trial to plead the former conviction, or once in jeopardy, he may be retried for murder and convicted of murder in the second degree.

ID.—WAIVER OF PLEA—DEFECTIVE PLEA AFTER ARGUMENT—INSTRUCTION—RETURN OF VERDICT—REQUEST FOR CORRECTION—DISCRETION. Where the defendant, without interposing any plea of former conviction or jeopardy at the second trial, availed himself of all the challenges allowed upon a charge of murder, and only after argument to the jury was allowed upon request to interpose a plea of former conviction, which was defective in not stating where the judgment was rendered, as required by subdivision 3 of section 1017 of the Penal Code, and after instructions were given, and when the jury were returning, to bring in their verdict, defendant asked leave to correct the plea, the court did not abuse its discretion in receiving the verdict of conviction of murder in the second degree, without granting defendant's request.

ID.—DEFENDANT NOT PREJUDICED—IDENTITY OF SENTENCE.—The defendant was not prejudiced by the refusal of the court to allow a correction of his plea, where it appears that the sentence imposed upon him, upon the conviction of murder in the second degree, was identical with that imposed upon him under the former conviction for manslaughter.

ID.—ERROR IN ADMITTING EVIDENCE—CURE BY INSTRUCTION.—Error in admitting evidence of a statement of the defendant made in the county jail in the presence of the district attorney was cured by an instruction of the court to the jury to disregard the evidence.

ID.—EXPERIMENTS WITH PISTOL—INADMISSIBLE EVIDENCE—SIMILARITY OF CONDITIONS NOT SHOWN.—Evidence of experiments with a pistol were inadmissible, where the evidence is conflicting as to the rela-

tion between the defendant and deceased when the fatal shot was fired, and where the experiments do not appear to have been made under the same conditions, and the caliber of the revolver and cartridges used were not shown to have been the same as that used by the defendant.

ID.—ERROR MUST AFFIRMATIVELY APPEAR.—Error must be made affirmatively to appear, and where exhibits were merely offered for identification, and do not appear in the record, error is not shown.

APPEAL from a judgment of the Superior Court of Sonoma County and from an order denying a new trial. Emmett Seawell, Judge.

The facts are stated in the opinion of the court.

W. F. Cowan, and Joseph P. Berry, for Appellant.

U. S. Webb, Attorney General, for Respondent.

CHIPMAN, P. J.—Defendant was convicted of the crime of manslaughter upon an information charging murder. He appealed from the judgment of conviction to this court, and a new trial was ordered. (*People* v. *Solani,* 2 Cal. App. 225, [83 Pac. 281].) At his second trial he was tried upon the original information. He was not again arraigned, and the trial proceeded without further plea of the defendant than his original plea of "not guilty." After the cause had been argued to the jury and as the court was about concluding its instructions, counsel for defendant asked leave to interpose a plea of once in jeopardy, and former acquittal, and also asked the court to instruct the jury upon the theory of once in jeopardy. The plea offered was defective in failing to state where the judgment of conviction was rendered, as required by subdivision 3, section 1017, of the Penal Code. The court declined to allow the reading of the instructions to be interrupted and stated that it would later consider the offer of defendant. At the conclusion of the reading the matter was again brought before the court. It appears that at the opening of the trial it was agreed between the district attorney and defendant's counsel that defendant would take twenty peremptory challenges "as long as this information charged murder," and that the case was tried and the instructions framed upon the theory that the charge being investigated

was murder. It further appeared that to grant defendant's
request would have required the instructions already given to
be recast to some extent. Upon this state of facts the court
denied defendant's request. The court thereupon gave the
jury five forms of verdict which do not appear in the record.
The instructions were full and clear as to what constitutes
murder in the first and second degree and manslaughter, and
it must be presumed that the forms of verdicts embraced
manslaughter among other crimes of which defendant might
have been found guilty or not guilty.

Later, when the jury was about to return with its verdict,
but before it had been brought into the courtroom, defendant
asked leave to correct his plea of jeopardy so as to state
therein at what place the former judgment of conviction had
been entered and that the jury "be directed to return a ver-
dict of once in jeopardy." The court directed that the
jury be brought in, without giving any further instructions.
Thereupon the jury came into court and rendered its verdict
of murder in the second degree. Before it was recorded de-
fendant objected to the recording of the verdict on the ground
that "the court is without jurisdiction to pronounce the judg-
ment allowed by law, and the verdict is illegal and the jury
without legal authority to find the same." Motion was regu-
larly made in arrest of judgment and for a new trial, which
was denied, and defendant appeals from the judgment and
order denying his said motion.

1. The principal question presented by the appeal arises
out of the refusal of the court to permit the defendant to
plead jeopardy. If, as appellant contends, the court was
without jurisdiction, under any circumstances, to try him for
the crime of murder, clearly he had the right at any stage of
the trial to raise the question by any appropriate step. But in
the numerous cases where there has been a new trial granted,
after conviction of manslaughter upon an information for
murder, thus acquitting the defendant of the crime of murder,
the supreme court of our state has held that it is no violation
of the defendant's constitutional right to protection against
being placed twice in jeopardy for the same offense, unless
he pleads former conviction. It was said in *People* v. *Ben-
nett,* 114 Cal. 58, [45 Pac. 1013] : "The law's method must
be pursued by him who asks the protection of the law." It
was also said: "The fact that the first trial was held in the

same court, and before the same judge as the second trial, in no way excused the necessity of the plea of once in jeopardy."

The question was discussed at some length in *People* v. *McFarlane,* 138 Cal. 481, [71 Pac. 568, 72 Pac. 48], where the opinion upon the point met the concurrence of the full court by refusing a rehearing. Nothing in *People* v. *Smith,* 134 Cal. 453, [66 Pac. 669], can be said to be in conflict with the views expressed in *People* v. *McFarlane,* which is confirmed by the fact that the writer of the opinion in the Smith case inferentially approved the opinion in the McFarlane case.

In the recent case of *Huntington* v. *Superior Court,* 5 Cal. App. 288, [90 Pac. 141], the court held that the trial court was without jurisdiction to try the defendant for murder. But as we understand the opinion, written by Presiding Justice Cooper, it was so held because the offense charged did not involve the elements of manslaughter, and, as the defendant could not be convicted of murder, there was no authority to try him on the charge of murder or manslaughter. The question, therefore, was one of discretion with the trial court whether or not to admit the plea under the circumstances, and unless that discretion was abused this court will not interfere.

It is not claimed that counsel for defendant were ignorant of his rights or of the decisions upon the very point in question. With this knowledge counsel, we must presume, intentionally chose to go to trial without a plea of jeopardy. They claimed and exercised the right to twenty peremptory challenges, when otherwise but ten were allowed; tried and argued the case and stood by until nearly all the instructions of the court had been given the jury, and then offered an ineffectual plea (*State* v. *Lewis,* 31 Wash. 86, [71 Pac. 778], citing *People* v. *O'Leary,* 77 Cal. 30, [18 Pac. 856]), which was not corrected until the jury had returned a verdict. It seems to us that there was no abuse of discretion in the action of the court. Defendant received the same sentence at both trials, so that, while his counsel may reproach themselves for the risk they took in not.pleading jeopardy, both they and defendant may find consolation in the fact that defendant has probably suffered no prejudice thereby.

2. In the course of the trial plaintiff offered in evidence a statement which plaintiff claimed defendant had made in

the county jail in the presence and hearing of the district attorney, and which was reduced to longhand by the official court reporter, who was also present and heard defendant make the statement. It was objected to as immaterial, irrelevant and incompetent. ''The Court: I suppose that covers everything; I suppose it includes the accuracy of the transcription, and the accuracy of the interpretation. Mr. Cowan (attorney for defendant): No; we admit the accuracy of what Mr. Lafferty (court reporter) took down; that Mr. Lafferty took down what he heard. The Court: Of course I can't tell whether it is competent or not. I have not seen it or heard it. . . . The objection is overruled to the introduction of the statement.'' Later during the trial the question of the admissibility of this evidence came before the court, and the court said: ''Gentlemen of the jury, I will admonish you that you are to disregard the statement read to you and alleged to have been the statement of Mr. Solani.'' In *People* v. *Prather,* 134 Cal. 436, 439, [66 Pac. 589, 863], the court said: ''Whatever error may have occurred in the admission in evidence of the verdict and judgment in the larceny case was cured by the subsequent action of the trial court in taking the evidence away from the jury. At that time the court instructed the jury specially not to consider the evidence so taken from them, and it will be presumed that the jury obeyed the instruction.'' The court further said that it is only in certain exceptional cases where the action of the court in withdrawing evidence from the jury, which it deems erroneously admitted, may not be held to cure the error committed in its admission. Under ordinary circumstances the court should be allowed to correct an error of this kind, and, we think, it should be done under the present circumstances.

3. The homicide occurred in front of the Roma Hotel in the town of Glen Ellen at about 10 or half-past 10 o'clock at night. The evidence is conflicting as to the relation of the defendant and deceased to each other at the instant the fatal shot was fired. Two witnesses for the prosecution located deceased as standing from five to eight feet distant from the hotel porch on which, or on the lower step leading up to the porch, the defendant stood. Another witness, a fellow-Italian, was near the parties when some angry words passed between them. He testified to having separated them at one time when

defendant had drawn his revolver as though to shoot deceased. His testimony was that deceased was standing in the middle of the road when the shot was fired, and defendant was three or four steps from the porch and about six or seven steps from the deceased; that deceased fell backward to the ground when shot, and at the time was standing with his hands on his hips (showing the hands on the hips outside of the coat). Witness testified that he grappled with defendant after the first shot and threw him down, and while in this position defendant fired two more shots, both taking effect on witness. Witness Dr. Crepin, who assisted Dr. Thompson at the autopsy, testified for the prosecution at the first trial that there were powder marks on the skin around the wound; at the second trial he testified that he saw no powder marks and was quite sure there were none, but that he "could not swear to an absolute certainty that there were no powder marks." Dr. Thompson testified for the defense that there was discoloration around the orifice of the wound which in his opinion "was caused by a powder burn," which did not extend beyond an area greater than two inches in diameter; that his opinion was based upon the appearance of the skin —"something embedded in the skin" which he "took to be particles of charcoal . . . particles of powder underneath the skin, underneath the cuticle." He further testified that he did not examine these particles to determine what they were; that he was not asked to do so; that his opinion was formed merely from surface indications; that he had no experience in the use of a gun, and in his medical experience he had not had occasion to examine or study gunshot wounds to any extent. Witness Hardman testified for the defense that he assisted in dressing the corpse for burial; that "there were little black specks, or rather black and blue, that was around that wound, from a distance—well the size of a half-dollar or a dollar." Again, "what I have reference to by the grains was the impression; you could not see exactly the grains, but the impression as the corpse was stiff— . . . that is as near as I can explain it. There was congested blood all over the face and forehead. There was little indentations on the skin."

The testimony of defendant, in his own behalf, was that he had been thrown down by deceased and a friend of deceased, one Ricci; that Ricci was on top of him as he was lying on the

ground and deceased close by on the ground or on top of him. Defendant was corroborated in some degree as to his being down, and a witness testified that deceased was on top of him when defendant fired. It appeared that the revolver introduced at the first trial was not identified with certainty as the revolver introduced at the second trial as the one used by defendant, and there was some question whether it was a 32 or 38 caliber.

Witness Boswell testified for defendant that he had experimentally fired into white paper with a 32-caliber revolver with a cartridge loaded with black powder, at distances of eight and fourteen inches and two and four feet. Defendant's counsel offered to prove by the witness that the revolver discharged at a distance of eight inches from the muzzle of the revolver to the paper produced an effect similar to that described by witness Hardman. The witness was asked whether there were any powder marks shown in the experiments made at the other distance, and if so to describe them. Certain four exhibits were shown the witness and offered for identification which it was claimed tended to prove the result of Boswell's experiments. These exhibits were not offered, except for identification, and do not appear in the record. The district attorney objected to all this offered evidence as immaterial, incompetent and irrelevant. The court sustained the objection on the grounds that the "experiments do not seem to have been under the same conditions or upon the same substance."

Among the cases which have come before our supreme court where this class of evidence has received attention are the following: *People* v. *Clark,* 84 Cal. 573, [24 Pac. 313] ; *People* v. *Levine,* 85 Cal. 39, [22 Pac. 969, 24 Pac. 631] ; *People* v. *Woon Tuck Wo,* 120 Cal. 294, [52 Pac. 833] ; and *People* v. *Weber,* 149 Cal. 325, [86 Pac. 671]. The question is quite fully discussed in *State* v. *Justus,* 11 Or. 178, [50 Am. Rep. 470, 8 Pac. 337]. In *People* v. *Woon Tuck Wo,* 120 Cal. 294, [52 Pac. 833], it was held that the admission of such evidence is largely within the discretion of the trial court, and that a case will not be reversed for an abuse of discretion by the court in rejecting such evidence, unless it comes clearly within the principles by which it is allowed. The principle upon which this class of evidence is held admissible is stated as follows: "Unless the experiments are shown to have been under essentially the same conditions that existed in the case on trial, the

tendency is to confuse and mislead rather than enlighten the jury''; citing *Lake Erie etc. R. R. Co.* v. *Mugg,* 132 Ind. 168, [31 N. E. 564]. The court further said: ''There must be a possibility of reproducing substantially the same conditions which existed when the original occurrence took place, or the evidence will not be admitted.'' We should be unwilling to hold that under no circumstances could experiments be made in a case such as we have here, unless made upon a live human being. In *Burg* v. *Chicago R. R. Co.,* 90 Iowa, 106, [48 Am. St. Rep. 419, 57 N. W. 680], it was held that the rule does not exact more than a substantial or reasonable similarity; and in *Fein* v. *Cov. Mut. Ben. Assn.,* 60 Ill. App. 274, it was held that an experiment made upon white paper to test the distance at which powder would burn the human skin presented conditions substantially the same as the occurrence itself. The court said: ''The difficulty of obtaining the latter substance for such an experiment is manifest without argument to show that the substitution of paper was the best that could be done under the circumstances.'' In the case of *People* v. *Clark,* 84 Cal. 573, [24 Pac. 313], the experiment with a Winchester rifle was made upon clothing to show that at a given distance no powder marks were made. In that case the evidence was admitted, but it was also an admitted fact that there were no powder marks upon the clothing of the deceased. In the Woon Tuck Wo case the fact in dispute was whether the homicide could have been witnessed from the point where the witness stood who testified that he saw it committed. It was sought to prove by a witness standing at that point that he could not see and recognize a person standing where the defendant stood. The court said: ''We think there could be no substantial reproduction of the same conditions under which the witness for the prosecution testified to having seen the homicide committed by the defendant, and to have recognized him immediately afterward. The testimony of the various witnesses who testified for the prosecution and for the defendant, who were at the scene at the time of or immediately after the homicide, was very conflicting as to the condition of the lights at that time; and under these circumstances the proposed testimony of the witness McFarlane would have 'tended to confuse and mislead, rather than enlighten the jury.' ''

In the case here the evidence was not only conflicting but far from satisfactory as to there being any powder marks plainly discernible around the wound. The caliber of the revolver used for the experiment was not shown with certainty to be the same as that used by the defendant, nor was there any evidence that the cartridge used for loading was the same in its contents.

It may be further observed that it nowhere appears in the record that the witness Boswell was asked to state the result of any experiment except the one made at eight inches' distance from the paper. It was not shown what he would testify to as to other distances, or what the exhibits showed. Error must be made affirmatively to appear. *Non constat* but all his other experiments would have shown no powder marks, and thus have confirmed the theory of the prosecution.

The judgment and order are affirmed.

Burnett, J., and Hart, J., concurred.