[Crim. No. 2573. In Bank.—December 21, 1923.]

## THE PEOPLE, Respondent, v. HUGH H. NEWELL, Appellant.

[1] CRIMINAL LAW—UTTERING DRAFT WITHOUT SUFFICIENT FUNDS OR CREDIT — VIOLATION OF SECTION 476A, PENAL CODE — PLEAS OF FORMER ACQUITTAL AND ONCE IN JEOPARDY—ABSENCE OF EVIDENCE —WAIVER.—A defendant in a prosecution for a violation of section 476a of the Penal Code in making, drawing, uttering, and delivering a bank draft without funds or credit to meet it upon presentation, claiming his discharge under special pleas of former acquittal and once in jeopardy, waives such pleas where he does not offer any evidence in support thereof.

[2] ID.—SPECIAL PLEAS—EVIDENCE—WAIVER.—It is just as necessary to support special pleas by proof as it is to interpose the pleas, and the failure to do either is to be deemed a waiver of the defense.

[3] ID.—FORMER ACQUITTAL—ONCE IN JEOPARDY—WHEN QUESTION OF FACT AND OF LAW.—The pleas of former acquittal and once in jeopardy present a question of fact which the jury alone has power to pass upon, unless the defendant fails to support such pleas with proof, when it becomes a question of law upon which the court must pass.

[4] ID. — INFORMATIONS — RECORDS — JUDICIAL NOTICE — EVIDENCE.—
Where both informations are identical except that in one an in-
dividual is alleged to have not had sufficient funds in nor sufficient
credit nor any credit at all with a bank to meet a draft, and in
the other it is alleged that neither said individual nor a company
had sufficient funds or any credit to meet such draft, and both
trials have been held in the same court, in such circumstances the
court does not take judicial notice' of what is contained in its
files, the records, or the evidence, but proof must be offered by
the defendant to sustain the pleas of former acquittal and once
in jeopardy; but even if both informations were before the court
for the purpose of determining the sufficiency of the first informa-
tion, this did not relieve the defendant from the necessity of mak-
ing full proof before the jury in support of the special pleas.

[5] ID.—TIME OF TRIAL—DISMISSAL—WAIVER.—An application for
dismissal of a criminal prosecution on the ground that the de-
fendant is not tried within sixty days after the filing of the in-
formation must be made, in the first instance, in the court where
the prosecution is pending, and if the application is not made
therein before the trial is begun, the right is waived.

[6] ID. — TIME FOR ARRAIGNMENT — WAIVER — APPEAL. — There is no
statutory or other requirement fixing the time within which the
arraignment of a defendant shall take place, and where it does
not appear that it was claimed in the trial court that the defendant
was not seasonably arraigned, the contention on appeal that the
defendant was not so arraigned cannot be sustained.

[7] ID.—DEFENDANT HELD TO ANSWER—TIME FOR FILING INFORMA-
TION—DISMISSAL—WAIVER.—The proper procedure where relief is
sought under the first subdivision of section 1382 of the Penal
Code is to first apply to the court below for an order of dismissal;
and if this be not done the right will be deemed to have been
waived.

[8] ID.—STATUTE OF LIMITATIONS.—An information filed some three
years and nine days after the commission of the offense charged
is not barred by the statute of limitations where evidence was re-
ceived tending to support the allegations contained in the infor-
mation of defendant's absence from the state for a period of one
month and twenty-three days.

[9] ID. — ALLEGED MISCONDUCT OF DISTRICT ATTORNEY — EVIDENCE.—
In a prosecution for a violation of section 476a of the Penal Code
for making, drawing, uttering, and delivering a bank draft with-
out funds or credit to meet it upon presentation, there was no
misconduct on the part of the district attorney in engaging in
casual conversation with one of the jurors in the corridor outside
of the courtroom, during a recess, and while he was in plain view
of the bystanders, where the district attorney denied that he had

mentioned the case or the panel of the jurors to the juror, and the court afforded the defendant the fullest opportunity to support his contention of misconduct and admitted all the testimony offered by the defendant bearing on the incident, which testimony showed that there was no foundation for the asserted misconduct.

[10] ID.—RULINGS ON EVIDENCE—CORRECTNESS OF—MISCONDUCT.—In such a prosecution, after an examination of the record with reference to assigned rulings by the trial court on the evidence, no substantial error is found in any of them; neither is any merit found in the contention that the trial judge expressed an opinion as to a proposition of fact.

[11] ID.—ALIBI—INSTRUCTIONS.—In such a prosecution, the defendant cannot justly complain that his proposed instructions on the subject of alibi were not given, where the indorsements of the trial court thereon that they were substantially given elsewhere were fully justified by the instructions which the court gave of its own motion, and after an examination of the charge and the proposed instructions, no error is perceived in the action of the trial court in respect to either.

[12] ID. — BURDEN OF PROOF — INSTRUCTIONS. — In such prosecution, while an instruction proposed by defendant covering the rule of burden of proof should have been given, it cannot be held his rights were in any way prejudiced by the omission, where the given instructions had the effect of conveying to the jury the idea that the prosecution must establish defendant's guilt beyond a reasonable doubt, and that if the presumption of innocence was not overcome by that degree of proof the jury was in effect told that the burden of proof rested with the prosecution.

[13] ID.—AMENDMENT OF SECTION 476A, PENAL CODE, IN 1919—APPLICABILITY OF TO PROSECUTION.—In such a prosecution, where the defendant's individual signature on the draft in question followed the name of a company, and the information proceeded against him as an individual for having issued the draft without funds in or credit with the bank, and the evidence showed that the defendant was the company, the prosecution did not fall within that part of section 476a of the Penal Code which was amended in 1919 and after the offense was committed, making it a crime for a person "for himself or as the agent or representative of another or as an officer of a corporation" to draw such a draft.

[14] ID.—VERDICT—EVIDENCE.—In such prosecution, the evidence was sufficient to justify the verdict of guilty.

APPEAL from a judgment of the Superior Court of Alameda County and from orders denying a new trial and motion in arrest of judgment. George Samuels, Judge.

Appeal from order denying motion in arrest of judgment dismissed. Judgment and order denying new trial affirmed.

The facts are stated in the opinion of the court.

T. L. Christianson and Raine Ewell for Appellant.

U. S. Webb, Attorney-General, John H. Riordan, Deputy Attorney-General, Ezra W. Decoto, District Attorney, and Chas. Wade Snook, Deputy District Attorney, for Respondent.

LAWLOR, J.—The district attorney of Alameda County filed an information against the defendant, Hugh H. Newell, charging him with a violation of section 476a of the Penal Code in making, drawing, uttering, and delivering a bank draft without funds or credit to meet it upon presentation. The draft is in words and figures as follows, to wit:

> "San Francisco, Cal.
>                              "Jan. 25 1919   19....;
> "Wells Fargo Nevada National Bank
>          For Customers Use only
>          Pay to the Order of
>          Hal Warinack ......................$50.00
>          Fifty Dollars ......................Dollars
>          Value received and charge the same to account of
>          To Security Savings Bank, Riverside
>          Riverside, California.
>                    "New Ellen Potash and Chemical Company
>                              "By Hugh H. Newell
>                              "Hugh H. Newell."

The second "Hugh H. Newell" was made with a rubber stamp, the rest of the signature being in handwriting.

It is alleged that neither the defendant nor the company had sufficient funds in or sufficient credit with the Riverside bank, or any credit at all, to meet the draft on presentation, which the company and defendant well knew. It is further alleged that after the draft was drawn by defendant he delivered it to the First National Bank of Oakland with intent to defraud the said bank. Upon arraignment defendant pleaded not guilty to the charge and interposed two special pleas—former acquittal and once in jeop-

ardy. . The defendant was found guilty as charged in the information and under the instructions of the court the jury found in favor of the prosecution on the said special pleas. In due course defendant interposed, respectively, a motion for a new trial "on all the statutory grounds," and a motion in arrest of judgment, both of which motions were denied; whereupon he gave an oral notice of appeal from the order denying the motion for a new trial, from the order denying the motion in arrest of judgment, and from the judgment of conviction.

Appellant's brief herein purports to have been prepared by himself, although he was represented on the oral argument in this court by one of the counsel who appeared at the trial. The brief concludes as follows: "Defendant respectfully submits, therefore, that the order, judgment and decree of the District Court of Appeal be affirmed, and that the judgment of the Superior Court in and for the County of Alameda County be reversed, and defendant discharged."

1. We will first consider appellant's contention that he is entitled to his discharge under his special pleas of former acquittal and once in jeopardy.

Appellant relies on an asserted former trial of the action and a verdict of not guilty by reason of variance between the pleading and proof to sustain his pleas. It appears from the record that when the first witness for the prosecution was about to testify at the last trial counsel for appellant addressed the court as follows: "At this time, if your Honor please, I wish to make a motion to exclude any testimony in this case on the part of the prosecution on the ground of the plea of once in jeopardy, and I wish to call your Honor's attention to the fact that the Information which is now filed, under which this defendant is being tried, states in legal terms the same and identical crime for which the defendant was once before tried, and in which a jury found a verdict of 'Not Guilty' upon the instruction or advice of the Court in the previous trial, and that the question becomes a question of law in this case—while the question of former jeopardy is more a question of fact to be decided by the jury in the case where the evidence is the same, still it becomes also a question purely of law, as held by the Supreme Court of this State. (Cites cases.) The question of former jeopardy becomes a question of law, and

one in which the jury is not competent to decide a matter of law, as to whether the Informations are the same or are identical, or whether the plea of former jeopardy in regard to the indictment in this case would be decided under the test of former jeopardy, the test of former jeopardy is, if what is set out in the second Information has been proved under the first it would have supported a conviction, and if it would the second cannot be maintained. Now, it becomes purely a question of law for the Court itself to determine, if what is set out in the second Information, under this present Information, has been proved under the first, if it would have supported a conviction, and if it would the second cannot be maintained.'' The court ruled as follows: ''The Court: I take it, gentlemen, that the entire argument is based upon the question as to whether or not the Information upon which the defendant was tried formerly was a valid Information. If it was invalid, a conviction would never have been sustained, and a person tried upon an invalid complaint is, according to *People* vs. *Ammerman*, just cited by counsel for the defendant, not once in jeopardy, and the Court so rules and the motion is denied.''

When the prosecution rested and before any evidence was offered on behalf of appellant his counsel moved as follows: ''The next motion is that we ask the Court, as a matter of law to direct a verdict or to advise a verdict of the jury to return a verdict of acquittal of this defendant, upon the ground that the evidence that has been introduced on this trial is the same evidence that was introduced on the former trial of this defendant in this same courtroom, before the same judge and the same court, and that the informations are the same—that the information on the first trial was sufficient in law to sustain a conviction—if this same evidence had been introduced under the first information filed, that that information would have been sufficient in law to sustain that evidence—in view of the fact there has been no demurrer interposed in that case against that information, and that the case was tried without a dismissal of the jury; that the jury heard the prosecution's case and the case was closed by the prosecution, and after the prosecution's case was closed, the defendant then made a motion and asked the Court for a verdict in favor of the defendant on the ground of the insufficiency of the evidence to sustain a conviction,

and the Court granted the motion on the ground there was a material variance between the information and the evidence, but that the jury, without being discharged, thereupon found a verdict in favor of the defendant of not guilty, which verdict was recorded in this court, and the jury was then and there discharged after the verdict had been rendered, and they had agreed that that was their verdict; and that at no time had the defendant asked for the jury to be discharged, or the case be discharged, and that the verdict was a verdict in favor of the defendant, and he has been once in jeopardy, and the defendant moves on those grounds that the jury be advised to find a verdict of not guilty. The Court: Is the matter submitted? Mr. Higgins: Submitted. Mr. Ewell: Submitted. The Court: Motion denied.''

The record does not show that any other action was taken on behalf of appellant during the trial in respect to the special pleas, nor does it contain any evidence in support thereof.

The petition of the attorney-general for a hearing herein presents two points on the special pleas—first, that the defendant, not having offered any evidence in support thereof, is deemed to have waived this defense, and, second, that even if this be not true, the previous verdict of acquittal because of a material variance between the pleading and proof did not operate as a bar to a further prosecution. We will first consider the failure of appellant to present any evidence in support of the special pleas.

[1] It was evidently under the misconception that the determination of the special pleas was confided to the court alone that no attempt was made to sustain these pleas by proof. Appellant failed to offer in evidence the first information, the minutes of the plea, the minutes of the trial, the proposed instructions, the instructions given or refused, or the judgment. In fact, no part of the judgment-roll of the asserted first trial was offered in support of the special pleas. There was no testimony identifying appellant as the defendant in the former action. The evidence purported to have been taken on the former trial was not offered in support of the pleas. Appellant claims the evidence was covered by a written stipulation, but this is denied by the prosecution, and the paper referred to shows it was signed alone by counsel for appellant. Nor is the statement of

appellant's counsel that the evidence was the same on both trials the equivalent of proof that it was identical. It is shown by the transcript on appeal that after certifying to the judgment-roll of the second trial, the clerk of the court included in the succeeding pages what purports to be the first information and the verdict of the jury on the ground of variance, and certified to these papers as the judgment-roll on that trial. None of these papers had any proper place in the transcript on appeal. If the information and verdict had been received in evidence, they should have appeared with the other proof in the reporter's transcript on appeal as evidence under the special pleas.

For the purpose merely of illuminating appellant's contentions, we may have recourse to the first information. The only difference in the two informations is that the first alleged that "the said Hugh H. Newell . . . did not have sufficient funds in, nor sufficient credit with, nor any credit at all with" the bank to meet the draft. The second information alleged that "neither the said Hugh H. Newell nor the said New Ellen Potash and Chemical Company . . . had sufficient funds in or sufficient credit with or any credit at all with" the bank to meet the draft. Referring again for the same purpose to the purported first information and the verdict on that trial it may be assumed that the court on the first trial advised the jury, in conformity with sections 1151 and 1165 of the Penal Code, to acquit appellant on the ground of variance. We have already quoted appellant's counsel to the effect that after the prosecution rested on the first trial he made a motion for acquittal on the ground of the insufficiency of the evidence and that the court then advised the jury to acquit on the ground of variance.

We shall next consider whether the court erred in instructing the jury to find for the prosecution on the special pleas.

"No person shall be twice put in jeopardy for the same offense" (Const., art. I, sec. 13). "No person can be subjected to a second prosecution for a public offense for which he has once been prosecuted and convicted or acquitted" (sec. 687, Pen. Code). Upon a review of the authorities it was said in *In re Harron,* 191 Cal. 457 [217 Pac. 728]: "It must be regarded as the law of this state that the constitutional and statutory pleas must be entered specially, and

if this is not done they are waived. This is the general
rule (L. R. A. 1917A, 1233n, citing many authorities, includ-
ing *People* v. *Bennett, supra* [114 Cal. 56], and *People* v.
*Strickler,* 167 Cal. 627 [140 Pac. 270]).'' Appellant's spe-
cial pleas were sufficient in form, but it has been held that
such pleas present a question of fact which the jury alone
has power to pass upon, unless the defendant fails to support
such pleas with proof, in which event it becomes a question of
law upon which the court must pass (*People* v. *Bennett,* 114
Cal. 56, 59 [45 Pac. 1013]; *People* v. *Solani,* 6 Cal. App. 103
[91 Pac. 654]; *People* v. *McFarlane,* 138 Cal. 481, 484 [61
L. R. A. 245, 71 Pac. 568, 72 Pac. 48]; *People* v. *Cummings,*
123 Cal. 269, 272 [55 Pac. 898]; *People* v. *Wilkison,* 30 Cal.
App. 473, 477 [158 Pac. 1067]). See *Rebstock* v. *Superior
Court,* 146 Cal. 308, 315 [80 Pac. 65].

''When the guilt of defendant is in question, he is pro-
tected by the presumption of innocence; but when a former
conviction or acquittal is in question he has no such presump-
tion to aid him. Therefore, to sustain such a plea, the bur-
den is upon defendant, and he must prove not only the
former conviction, acquittal, or jeopardy, but also the iden-
tity of the parties and of the offenses, and the jurisdiction
of the court'' (16 Corpus Juris, 425).

''And whatever be the true course in a case within our
next subtitle, it is commonly understood that nothing short
of a showing by record of a prior conviction or acquittal will
sustain the plea here considered. . . . The Burden of Proof—
to establish this plea, being matter affirmatively alleged by the
defendant, is on him'' (2 Bishop's New Criminal Procedure,
632, 633). To the same effect are *People* v. *McFarlane,
supra; People* v. *Preciado,* 31 Cal. App. 519, 531 [160 Pac.
1090].

[2] It is just as necessary to support special pleas by
proof (*People* v. *Cummings,* 123 Cal. 269, 272 [55 Pac.
898]) as it is to interpose the pleas, and the failure to do
either is to be deemed a waiver of the defense (*People* v.
*Strickler,* 167 Cal. 627 [140 Pac. 270]; *People* v. *McFarlane,
supra*). It was said in *People* v. *Stoll,* 143 Cal. 689, 696
[77 Pac. 818, 821]. ''The right to interpose a plea of once
in jeopardy is a personal privilege, of which a defendant
may, or may not, avail himself.'' The principle was quoted
in *People* v. *Bennett,* 114 Cal. 56, 59 [45 Pac. 1013], that

"The law's methods must be pursued by him who seeks the protection of the law."

[3] The special pleas of appellant presented an issue of fact, and as no evidence was offered in support thereof, a question of law was presented to the trial court, which that court decided by instructing the jury to find for the prosecution on the special pleas. It was incumbent on the court to so instruct the jury (*People* v. *Cummings,* 123 Cal. 269, 272 [55 Pac. 898]; *People* v. *Wilkison,* 30 Cal. App. 473, 477 [158 Pac. 1067]).

[4] It is urged by appellant that because both informations were identical except in the particular already mentioned, a question of law only was presented which the court should decide, thus ignoring the rule laid down in the authorities we have cited that special pleas must be supported by evidence and determined by the jury, even when both trials have been held in the same court. In such circumstances the court does not take judicial notice of what is contained in its files, the records, or the evidence, but proof must be offered by the defendant to sustain the pleas. It is claimed in this connection that during the trial the court caused both informations to be produced, and that, after examining and comparing them, held the first information to be insufficient. We find no warrant in the record for this statement of fact, but even if both informations were before the court for the purpose stated, this did not relieve appellant from the necessity of making full proof before the jury in support of the special pleas. It follows that the defenses of former acquittal and once in jeopardy were waived. This being so, it becomes unnecessary to determine under this head whether the first information stated facts sufficient to constitute a public offense, or whether the court erred in instructing the jury to bring in a verdict of not guilty upon the ground of a variance between the pleading and proof upon the motion of appellant under section 1118 of the Penal Code to advise the jury to acquit because of the asserted insufficiency of the evidence, even if it be assumed the points were properly presented in the court below.

2. Appellant next contends that he "was not tried within sixty days after the filing of the information, nor arraigned within thirty days after the filing of the information, and the information was filed more than thirty days after de-

fendant was held to answer, and more than three years after offense was committed.''

[5] First as to the trial: It is shown by the clerk's transcript on appeal that the information herein was filed on February 1, 1922, and that the trial opened on June 14, 1922—134 days after the filing of the information. But there is no showing anywhere that the relief afforded by subdivision 2, section 1382 of the Penal Code, was sought in the superior court. The application must be made, in the first instance, in the court where the prosecution is pending (*Ex parte Fennessy*, 54 Cal. 101), and if the application is not made therein before the trial is begun the right is waived (*People* v. *Hawkins*, 127 Cal. 372, 374 [59 Pac. 697]). It follows there is no merit in this claim.

[6] As to the question of arraignment, it may be stated that there is no statutory or other requirement fixing the time within which the arraignment shall take place. Appellant was arraigned on April 13, 1922, and according to his claim this was the second arraignment on the same charge. Moreover, it does not appear it was claimed in the court below that the appellant was not seasonably arraigned, and this alone is a sufficient answer to the contention.

As to the next point, it is not shown that at any time prior to appeal the point was made that the information was not filed within thirty days after appellant was held to answer. Here, again, it is to be noted, appellant asserts two informations were filed. As has already been stated, the one herein was filed on February 1, 1922, but it nowhere appears when appellant was held to answer. [7] The proper procedure where relief is sought under the first subdivision of section 1382 of the Penal Code is to first apply to the court below for an order of dismissal; and if this be not done the right will be deemed to have been waived. There is no merit in this contention.

[8] The next point is that the information was not filed within three years after the alleged commission of the offense (sec. 800, Pen. Code). It does not appear whether this was made a ground of demurrer or was otherwise brought to the attention of the lower court. However, the information alleges that the offense was committed on January 22, 1919, some three years and nine days before the filing of the information. But the information also alleges that on or

about October 5, 1921, appellant fled from the state of California to the republic of Mexico, and that he remained outside of the jurisdiction of the court continuously until on or about November 28, 1921—a period of one month and twenty-three days. Evidence was received tending to support the allegations of absence from the state, and there is no foundation, therefore, for appellant's claim that the statute of limitations had run against the charge.

We shall notice some additional points made in appellant's brief in the district court of appeal.

[9]   One of these is the asserted misconduct of the district attorney in conversing with one of the jurors in the case. It appears from the testimony that the district attorney, in the corridor outside of the courtroom, during a recess, and while he was in plain view of the bystanders, engaged in casual conversation with one of the jurors, whom he had previously spoken to at an improvement club meeting. The district attorney denied that he had mentioned the case or the panel of jurors to the juror. The court afforded appellant the fullest opportunity to support his contention and admitted all the testimony offered by appellant bearing on the incident. Upon the showing made, it is manifest there was no foundation for the asserted misconduct, and the court properly declined to take any action.

Other assignments of error are: ''That the court erred in admitting and rejecting evidence, in striking out and refusing to strike out testimony, in instructions given and refused, and was prejudiced and expressed an opinion of a question of fact before the jury trying this cause.'' It is also urged that the evidence is insufficient to justify the verdict.

[10]   We have examined the record with reference to the assigned rulings on the evidence and find no substantial error in any of them. It is apparent that the court, in disposing of the numerous objections made by appellant's counsel during the trial, exercised an intelligent care to have its rulings conserve appellant's rights and to render the record free from error. There is no merit in the contention that it expressed an opinion as to a proposition of fact; what happened was that in the cross-examination of a witness his previous testimony was called to his attention, and the remark of the court that there was no difference in the

testimony of the witness as to the point in question was apparently true. At any rate, after the objection the court stated that the jury would determine whether there was any difference.

[11] Appellant complains that his proposed instructions on the subject of alibi were not given. But the indorsements of the court thereon that they were substantially given elsewhere are fully justified by the instructions which the court gave of its own motion. We have carefully examined the charge and the proposed instructions and perceive no error in the action of the court in respect to either.

Appellant assigns error to the refusal of the court to give a proposed instruction covering the rule of burden of proof. The instruction in question correctly states the law as to the presumption of innocence, the measure of proof in a criminal case. It also declared that the burden of proof was on the prosecution. The indorsement is: ''Given substantially elsewhere.'' We do not find in the charge of the court any specific statement as to the burden of proof, but it contains statements of the presumption of innocence, that if the evidence is not sufficient to overcome the presumption of innocence to a moral certainty and beyond a reasonable doubt appellant must be acquitted, that the evidence must be examined in the light of the presumption of innocence, that mere suspicion or even a strong suspicion would not justify appellant's conviction, not even if the evidence, in the opinion of the jury, preponderated in favor of the prosecution, that they must be satisfied that the facts presented in evidence are incompatible with any reasonable theory of innocence or upon any reasonable hypothesis than that of guilt or he must be acquitted, that if from an examination of the evidence in certain of its aspects they believe him guilty, and from an examination of other aspects of the evidence they believe him not guilty, they should adopt the view of the evidence favoring acquittal, that mere probabilities or the greater weight or preponderance of evidence or the doctrine of chances are not sufficient—''he must be proved to be guilty so clearly and conclusively that there is no reasonable theory under the law and the evidence upon which he can be innocent,'' that they have no right to disregard the testimony of appellant, and that even if he stands charged with the commission of an offense he is presumed to speak the truth. The failure to give the proposed instruction was evidently

due to an inadvertence. [12] The propositions embraced in the foregoing instructions were stated to the jury with marked repetition and in varying forms, and while the proposed instruction should have been added to the numerous other instructions proposed by and given on behalf of appellant, it cannot be held his rights were in any way prejudiced by the omission. The instructions we have referred to inevitably had the effect of conveying to the jury the idea that the prosecution must establish appellant's guilt beyond a reasonable doubt, and that if the presumption of innocence was not overcome by that degree of proof the jury is in effect told that the burden of proof rests with the prosecution.

[13] Complaint is next made that the alleged offense properly comes under section 476a of the Penal Code as amended in 1919 (Stats. 1919, 238), and that as the amended section did not go into effect until July 22, 1919, six months after the alleged criminal act was committed, appellant was condemned to punishment under an *ex post facto* law. The amendment consists of the addition of two clauses—the first between the words "who" and "willfully"—"for himself or as the agent or representative of another or as an officer of a corporation," and the second between the words "he" and "has"—"or his principal or the corporation of which he is an officer."

Appellant contends that the amendment was adopted for the purpose of adding a new crime to the Penal Code and that, therefore, the information states no valid charge against appellant and the judgment is void. The position of the attorney-general is that the amendment was definitive on the part of the legislature and did not create another crime, that one who with intent to defraud issues a check against a bank knowing there are insufficient funds to meet it could not exculpate himself by showing that he signed his name as agent for some person, either real or fictitious. In this connection attention is called to the fact that appellant signed the draft in his individual capacity as well as the agent of the company, and that in so doing he came clearly within the provisions of section 476a as it stood before the amendment. The evidence showed that the company was appellant himself, that he was treated as a principal by the bank, and not as agent of the company, which was merely a fictitious designation under which he was then

doing business. The evidence further showed that the account carried by the Riverside bank was in the name of appellant and not the company; that on the date of the drawing of the draft his balance amounted to $3.03, and that neither appellant nor the company had any arrangement for any credit whatsoever.

There is no merit in appellant's contention. He was proceeded against for having issued the draft on a bank in which he had neither funds nor credit. The evidence is clearly sufficient to support the allegations of the information as to him. There was evidence that the company was fictitious, that the company was appellant, and appellant the company. The case, therefore, would not come within the amended portion of the section. It is not charged in the information that appellant was an agent of the company, nor whether the company was a copartnership or a corporation. His individual signature rendered him a drawer of the draft and brought him within the terms of the section as it formerly stood. Therefore, under the allegations of the information and the evidence, the prosecution of appellant does not fall within the amended part of section 476a.

[14] With respect to appellant's final contention that the evidence is insufficient to justify the verdict, it appears that the evidence offered by the parties tended to establish the following among other facts: About 3 P. M. on January 22, 1919, appellant entered the First National Bank of Oakland and endeavored to have N. B. Campbell, assistant cashier of the bank, O. K. by indorsement for cashing the draft set forth in the information. The request was denied. While this conversation was in progress, H. L. Anderson, paying teller of the bank, noticed appellant and N. B. Campbell talking together. Shortly after 3 o'clock appellant appeared before H. L. Anderson, apologized for being late and presented and cashed two checks or drafts, including the draft in question. Appellant had been in the bank previously and had cashed checks indorsed by another party. In that way appellant became known to N. B. Campbell and H. L. Anderson and his name had also been mentioned in connection with a projected business venture in Oakland. H. L. Anderson cashed the draft described in the information. It was sent to the Security Savings Bank at Riverside for collection, and returned with the indorsement, "no account."

192 Cal.—43

Appellant had an inactive account with the Riverside bank and on January 22, 1919, the account was ordered closed by the bank, and the amount of the credit balance, $3.03, was forwarded to appellant with a statement of the reasons for closing the account. The company never had an account with the Riverside bank.

Appellant was held in Dennemore state prison of the state of New York and, in June, 1921, was returned to California by Inspector John S. Dufton of the Oakland police force. While on the train between Albany and Plattsburg a conversation occurred between the officer and appellant concerning the charge. We quote: "Mr. Higgins: Q. Will you just relate what conversation you had with the defendant upon the occasion we have just mentioned? . . . A. He said to me, he said, 'What did you say I was arrested for?' So I pulled a warrant out of my pocket and I said, 'For passing a bad check in Oakland, California.' He said: 'Well, if a man is acting as the agent for a corporation and passes a bad check, can they hold him for it?' I said: 'Well, I guess they can, if they can prove it on you.' He said: 'Well, I will prove I had nothing to do with that.' I said: 'All right, my boy, if you can prove that, that is all the better for you.' "

Appellant relied on an alibi. He claimed to be in Chicago on January 15th preceding the cashing of the draft, that he left there for Los Angeles on the 16th or 17th of the same month, arriving at his destination about the 20th. He testified he was at the "Glenwood Mission Inn," Riverside, on the day the draft was cashed in Oakland. Appellant also testified he gave instructions to Hal Warinack, the drawee, to send the draft for collection.

It is apparent from the foregoing that there was ample evidence to sustain the verdict.

The appeal from the order denying appellant's motion in arrest of judgment is dismissed. The order denying the motion for a new trial and the judgment are affirmed.

Seawell, J., Myers, J., Kerrigan, J., Wilbur, C. J., and Waste, J., concurred.

Rehearing denied.

All the Justices concurred.