[Crim. No. 2440. First Dist., Div. Two. Feb. 27, 1947.]

In re INEZ L. BURNS et al., on Habeas Corpus.

Walter McGovern and John R. Golden for Petitioners.

Edmund G. Brown, District Attorney (San Francisco), and Thomas C. Lynch, Assistant District Attorney, for Respondent.

GOODELL, J.—This is a proceeding in habeas corpus.

The petitioners were accused by information of conspiracy to commit abortions (Pen. Code, §§ 182, 274) and of practicing medicine without a certificate (Bus. & Prof. Code, § 2141). There were two trials resulting in disagreements of the jury. The third trial resulted in the conviction on both charges of all five petitioners. Within a few days after sentence and commitment they filed the petition herein, based on the ground that in the last trial they were subjected to double jeopardy.

The trial opened on September 17, 1946, and just before the noon recess on the 19th, a jury of twelve men and women, including the juror Thomas J. Furner, all of whom had been theretofore examined and passed by both sides, was sworn to try the case. At the opening of the afternoon session the court directed that two alternate jurors be selected, to which the defense objected on the ground that no necessity appeared therefor. Several prospective alternates were examined on their *voir dire* and after one had been seated the court remarked that one alternate would be sufficient, to which counsel for the defense responded "All right, that is our stipulation."

The judge then called counsel into chambers and stated that after the jury had been impaneled and sworn his attention had been called to the fact that the juror Furner stood accused by an information then pending in the same department of the court, of a violation of section 480 of the Vehicle Code (hit and run, a felony) which fact neither he nor any of the counsel in the pending case had known at the time of Furner's *voir dire* examination. The judge stated that in his judgment this juror should not serve; that he purposed calling him in, and if he did not ask to be excused, the court would, in the exercise of its discretion, excuse him for cause and put the alternate in his place.

The defense objected, stating that a jury had been duly and regularly sworn to try the case; that the contemplated action could not be carried out legally; that the fact that Furner had been accused was not a ground for challenge for cause, and that if carried out the proposed action would result in a denial of the defendants' constitutional rights respecting double jeopardy. The defense stated, further, that if Furner were brought into chambers and questioned it would be intimidating the juror and would "possibly scare him into asking to be excused"; that the substitution of another juror would be denying the defendants their right to be tried by a jury of their own selection. The district attorney, when invited to comment, said nothing.

The juror was then called in and stated, in reply to the judge's question, that he was the same Thomas J. Furner against whom such information had been filed. The following transpired: "The Court: . . . Do you feel, Mr. Furner, under the circumstances, that you would care to be excused?" Juror Furner: "It is entirely up to yourself, your Honor. I want to be fair about it. In fact, I discussed this with my attorney and he said as long as I wasn't objected to and as long as I answered the questions truthfully, I could.

"The Court: Well, of course, there is no reflection upon you whatsoever. I want you to understand that. It was not called to the attention of the Court, nor was it called to the attention of the attorneys. None of us knew anything about it. And, of course, you are presumed to be innocent on that charge. But in view of the fact that you have been informed against by the District Attorney and that that charge is now pending in this very Department, the thought has occurred to me that you might possibly wish to be excused. I will ask

you again then if you wish to be discharged under those circumstances?

"Juror Furner: Well, if you think it is liable to cast reflection on anyone, it is perfectly all right with me if you wish to excuse me.

"Mr. McGovern: I am going to object, your Honor, on all of the grounds heretofore interposed.

"The Court: The record will show that, and the record will show that the Court in its discretion will excuse you, Mr. Furner. And you are to understand that there is no reflection upon you in that decision of mine. It is merely that I do not feel, in view of the fact that you have been informed against by the District Attorney, who is also prosecuting this case, that it would be fair to you or fair to anyone concerned to have you serve upon this case, and therefore you are discharged.

"Juror Furner: All right, sir.

"The Court: And the record will show for the cause heretofore stated by the Court.

"Mr. McGovern: To which we take an exception."

On returning to the courtroom the juror was formally excused and the alternate juror, named Lawrence A. Bailey, was sworn and seated in Furner's place.

Counsel then returned with the judge to chambers and moved that all five defendants be forthwith dismissed from all pending charges, on the ground that the court had indicated it intended to try them by a jury other than that which was theretofore selected, constituting double jeopardy. The motion was denied. They then indicated also that a formal plea of former jeopardy would be entered later. In denying the motion to dismiss, the judge stated that in his opinion "no Constitutional guarantee, either state or federal, has been violated as far as each defendant is concerned; no witness has been sworn, and the Court in the exercise of its discretion, does not believe it proper to proceed with a jury of twelve people, one of whom is presently charged with the commission of a felony by the Prosecutor and by the same attorneys who are conducting the prosecution in the instant case. An alternate juror has been chosen in accordance with the provisions of the Code and upon the excusal of the Juror Furner, the alternate juror was substituted in his place in accordance with the Court's understanding of what the proper procedure to be followed is. And for those reasons the motion is denied."

The next day the following transpired:

"Mr. Golden: Now, if our understanding of what took place yesterday is correct, at that time Mr. McGovern requested permission to enter a plea of once in jeopardy, which would have the effect as though it was made at the time, and the Court granted that permission.

"The Court: Yes.

"Mr. Golden: Now, then, for the record, your Honor, I make the plea on behalf of the defendants that, in addition to the plea of not guilty on the part of each defendant, the defendants and each of them plead that they and each of them have been once in jeopardy for the offense charged, namely, conspiracy to commit abortions and conspiracy to practice medicine without a certificate, and that on yesterday, September the 19, 1946, in Department 11 of the Superior Court, of the City and County of San Francisco, State of California, in this very courtroom, a jury of twelve persons, consisting of eleven of the persons presently in the jury box, plus a juror by the name of Thomas J. Furner, were duly and regularly impaneled and sworn and charged with the defendants' deliverance in this case—— . . .

". . . Well, in any case, duly and regularly impaneled and sworn to try the case. And I ask that that plea be entered with the effect as though it were made immediately upon the happening of the proceedings of yesterday, when the juror was substituted for Mr. Furner.

"The Court: I suppose the procedure is for me to deny the plea.

"Mr. McGovern: Yes, but will the record show it was made?

"The Court: The plea will be denied and the record will show that the plea made by Mr. Golden was made on behalf of all the defendants and the record will further show that it was timely made."

The trial then went forward in the ordinary way, and the introduction of evidence, the arguments and the instructions consumed six trial days.

The court sentenced the women defendants to Tehachapi and Hoff to San Quentin, for the term prescribed by law. Notice of appeal was filed at once. A stay of execution was granted, but bail was denied, pending appeal. At the time the petition was filed herein the petitioners were confined in the county jail. The appeal is pending in this division, and the transcripts on appeal have been on file for several months.

The petitioners' position on this application is that jeopardy attached when the original twelve jurors were sworn; that when the juror Furner was removed from the box the "jury was destroyed as completely as if all twelve jurors were so removed" and when the juror Bailey joined the other eleven the defendants on trial faced a second jury, hence a second jeopardy.

The petitioners advance the following reasons why habeas corpus is available to them: "The instant Furner was removed the trial court was without jurisdiction to do anything except grant applicants' motion for dismissal. . . . All subsequent proceedings were null and void . . . the trial court lost jurisdiction over these applicants when the trial jury was destroyed by the removal of Furner. . . . It appears from the record itself that the trial court was without jurisdiction to render the very judgment under which these applicants were held in custody. We emphasize that the point raised here goes to the jurisdiction of the court to render the judgment and because the question is jurisdictional it is proper to test it by the writ of habeas corpus."

That, in substance, was the appellants' position in *People* v. *Jackson,* 24 Cal.App.2d 182 [74 P.2d 1085], where the defendants moved that their pleas of former jeopardy and acquittal be tried by the court and determined before a jury was impaneled in the second case. The motion was denied, the case went to trial with all the issues before the jury, and there was a conviction. On appeal the defendants contended, as these petitioners now contend, *that the judgment was null and void.* It was held that the court had not erred in pursuing the usual course and proceeding with the trial of all the issues at one time. The court said,

"Appellants concede that there is authority in this state which supports the action taken by the trial court in this case, i. e., submitting the issues raised by the special pleas to the same jury at the same time the issues presented by pleas of not guilty were submitted. That the concession thus made is proper and further, that when such pleas have been entered and no evidence supporting them is produced, it is incumbent upon the trial court to instruct the jury to find for the prosecution on the issues raised by the special pleas is apparent from the decision in *People* v. *Newell,* 192 Cal. 659 [221 P. 622].

"Appellants nevertheless insist that the peculiar circumstances of this case are such that it was error for the trial court to proceed to trial on the issues presented by their pleas of not guilty in the face of their demand for a separate trial of the special pleas and of their objection to going to trial until the issues raised by their special pleas had been determined. The circumstances which appellants contend are proper to make the instant case an exception to the general rule announced in *People* v. *Newell, supra,* are fully set forth in *Jackson* v. *Superior Court,* 10 Cal.2d 350 [74 P.2d 243 (113 A.L.R. 1422)]. In passing it should be noted that the offenses here charged against appellants are different offenses than those alleged in the case last cited and that the decision therein is for this reason not applicable to the present situation. In our opinion, the circumstances upon which appellants rely are not sufficient to create an exception to the general rule heretofore stated. *We know of no rule requiring the trial of issues raised by the special pleas in advance of the regular trial.* The course of the proceedings was confined to the discretion of the trial court and no abuse of such discretion is manifest from a refusal to grant a separate trial on the special pleas." (Emphasis added.)

A petition for hearing was filed in the Supreme Court wherein it was argued that ". . . in the presence of a plea of 'once in jeopardy,' a jury can not be *sworn* to try a defendant upon the issue raised by his plea of 'not guilty' until the issue raised by the special plea has been determined, for the moment such a jury is sworn, jeopardy has attached to the defendant, and if he has been previously in jeopardy, he has thereby been placed twice in jeopardy for the same offense with no possibility of availing himself of his constitutional guarantee against such procedure. . . ." The petition was denied.

In *Heike* v. *United States,* 217 U.S. 423, 432 [30 S.Ct. 539, 54 L.Ed. 821], the court said: "The Constitution of the United States provides that no person shall be twice placed in jeopardy of life and limb for the same offense, yet the overruling of a plea of former conviction or acquittal has never been held, so far as we know, to give a right of review before final judgment. . . .

"It may thus be seen that a plea of former conviction under the constitutional provision that no person shall be twice put in jeopardy for the same offense does not have the effect to

prevent a prosecution to final judgment, although the former conviction or acquittal may be finally held to be a complete bar to any right of prosecution, and this notwithstanding the person is in jeopardy a second time if after one conviction or acquittal the jury is empanelled to try him again.''

In *People* v. *McGee*, 1 Cal.2d 611, 613 [36 P.2d 378], in holding that the statute of limitations in criminal cases is jurisdictional, the court remarked that ''This is, of course, a rule essentially different from that governing civil actions, and it results from the different character of the statute in the two kinds of proceedings. *In civil actions the statute is a privilege which may be waived by the party.*'' (Emphasis added.)

It is settled law in this state, and not questioned by the petitioners, that ''The right to interpose a plea of once in jeopardy is a personal privilege, of which a defendant may, or may not, avail himself.'' (*People* v. *Stoll*, 143 Cal. 689, 696 [77 P. 818]; *People* v. *Newell*, 192 Cal. 659, 667 [221 P. 622]; *People* v. *Frank*, 75 Cal.App. 74 [241 P. 924], and cases cited at p. 81).

It must not only be specially pleaded (Pen. Code, § 1016), but the statute (§ 1017, subds. 3, 4) prescribes with particularity just how this must be done, and the cases hold that if the statute is not substantially followed the plea is ineffectual. (*People* v. *O'Leary*, 77 Cal. 30 [18 P. 856]; *People* v. *Solani*, 6 Cal.App. 103 [91 P. 654]; *People* v. *Moronati*, 70 Cal.App. 17 [232 P. 991]; *People* v. *Hudson*, 92 Cal. App. 593 [268 P. 687]; *People* v. *Rogers*, 112 Cal.App. 615 [297 P. 924].) If no evidence is offered in support of the plea the defense is waived. (*People* v. *Newell, supra; People* v. *Frank, supra; People* v. *Higbee*, 78 Cal.App. 455 [248 P. 927]; *People* v. *Grace*, 88 Cal.App. 222 [263 P. 306].)

While the defense of the statute of limitations may ''be raised at any time, before or after judgment'' (*People* v. *McGee, supra*), or on habeas corpus (*In re Davis*, 13 Cal.App. 2d 109 [56 P.2d 302]), the defense of former jeopardy cannot be raised for the first time on a motion for new trial (*People* v. *Bennett*, 114 Cal. 56 [45 P. 1013]; *People* v. *Lachuk*, 5 Cal.App.2d 729 [43 P.2d 579]), or on appeal (*People* v. *Lee Yune Chong*, 94 Cal. 379 [29 P. 776]; *People* v. *Sachau*, 78 Cal.App. 702 [248 P. 960]).

The contrast between the defense of the statute of limitations and that of former jeopardy is concisely pointed out in the case of *People* v. *Allen*, 47 Cal.App.2d 735, 748 [118 P.2d 927], where the court said: "The fact that the statute of limitations is jurisdictional necessarily determines that a prosecution within the period specified is an essential element of the offense. *Thus, the problem is essentially different from the defense of once in jeopardy.* The Penal Code specifically requires a special plea in order that this defense may be raised (Penal Code, sec. 1016). If a special plea is not made, this defense is waived (*Rebstock* v. *Superior Court*, 146 Cal. 308 [80 P. 65]; *People* v. *Solani*, 6 Cal.App. 103 [91 P. 654].) But there is no provision of the Penal Code requiring or permitting a special plea in reference to the statute of limitations. A general verdict of guilty as charged, therefore, necessarily includes a finding on this element as it does in reference to the other elements of the offense." (Emphasis added.)

In the case of *In re Collins*, 151 Cal. 340, 350 [90 P. 827, 91 P. 397, 129 Am.St.Rep. 122], the court says in so many words that former acquittal or conviction is matter of defense which "does not go to the jurisdiction, and affords no ground for release on *habeas corpus*." This was followed in *In re Perry*, 94 Cal.App. 235, 237 [270 P. 996].

In *Ex parte King*, 10 Cal.App. 282, 283 [101 P. 810], it is said: "Indeed, it seems to be settled by authority, as stated in Church on Habeas Corpus, section 253: 'Neither will once in jeopardy be reviewed or inquired into on *habeas corpus*. If pleaded and disregarded, it is an error to be corrected by appeal.' For the reason that the question is one of error and not of jurisdiction the application of petitioner could not be entertained. . . ."

The case of *In re Connor*, 16 Cal.2d 701 [108 P.2d 10] was an application for release on habeas corpus from the state penitentiary on the ground that throughout the period of the petitioner's "arraignment, trial and conviction, the court failed to inform him of his right to counsel, or to appoint counsel to defend him, or to allow him a sufficient opportunity to procure legal assistance, all in alleged violation of fundamental rights guaranteed to him by the federal and state Constitutions, and in violation of section 987 of the Penal Code." The writ was discharged and the petitioner remanded. In the opinion the subject now under discussion is so fully treated that we quote from it rather extensively:

''Under the general rule well established in this state, but which admits of some modification under exceptional circumstances, this contention cannot at this late date be made the basis of a successful collateral attack by habeas corpus upon the validity of the judgment. The point could have been urged by petitioner on an appeal from the judgment, but none was taken. It could also have been urged in the proceedings to vacate the judgment instituted in 1933 and 1934, but it was not, either in the trial court or on appeal. (*In re Connor, supra.*) It is not a good ground for discharge in this proceeding. In this state a defendant is not permitted to try out his contentions piecemeal by successive proceedings attacking the validity of the judgment against him. (*In re Drew,* 188 Cal. 717 [207 P. 249]; *In re Connor, supra.*) Neither may the writ of habeas corpus be employed to serve the purposes of an appeal. (*In re Leonardino,* 9 Cal.App. 690 [100 P. 708].) The function of the writ, as described in the case last cited, 'is to determine the legality of one's detention by an inquiry into the question of jurisdiction and the validity of the process upon its face, and whether anything has transpired since it was issued to render it invalid. It is not designed to retry issues of fact or to answer the purpose of an appeal.'

''Again, in *In re Murphy,* 79 Cal.App. 64 [248 P. 1044], it is said: 'The law appears to be well settled that upon a petition for a writ of *habeas corpus* the scope of the inquiry is limited to questions affecting the jurisdiction of the court, the sufficiency in point of law of the proceedings and the validity of the judgment or commitment under which the prisoner is restrained. This inquiry is limited to the face of the proceedings. In other words, the alleged invalidity must appear upon the face of the judgment attacked by this method. (12 R.C.L. 1185, §8, p. 1240, § 59; 13 Cal.Jur. 217, § 4, and cases there cited.) In *Ex parte Long,* 114 Cal. 159 [45 P. 1057], it is stated: ''The inquiry to be had thereunder (on *habeas corpus* proceedings) does not extend beyond the question of jurisdiction and the validity of the process on its face.'' (*People ex rel. Doyle* v. *Atwell,* 232 N.Y. 96 [133 N.E. 364, 25 A.L.R. 107, 111].)'

''In *In re Maldonado,* 97 Cal.App. 288 [275 P. 495], a *habeas corpus* proceeding, the petitioner claimed that he had not been informed of his legal rights at the time of his arraignment. Denying him relief, the court stated: 'The writ

of habeas corpus is not a substitute for an appeal. (13 Cal. Jur. 217, § 4). Errors in the trial and denial of statutory rights which could be waived are grounds of appeal, but are not grounds for discharge on *habeas corpus*. (13 Cal.Jur. 236, § 17.)'

"A like conclusion was announced in *In re Gutierrez,* 1 Cal.App.2d 281 [36 P.2d 712]. Petitioner there applied for a writ of *habeas corpus* upon the ground, among others, that 'he was denied counsel and was not represented by counsel.' Refusing to grant relief, the court said: 'The proper method of presenting this objection is by appeal from the judgment. (*Ex parte Ah Sam,* 83 Cal. 620 [24 P.276]; *In re Maldonado,* 97 Cal.App. 288 [275 P. 495] . . . Each of the foregoing rights is one that he could have waived and the alleged denial of any one or all of them might properly have been raised by appeal but it is not a ground for discharge in this proceeding.' [citations] In other words, while the right of an accused to counsel will be protected, it is a right which may be waived."

Although we are satisfied, for the reasons and on the authorities cited, that the court had jurisdiction to enter judgment, that does not altogether settle the present problem, for the Supreme Court in *In re Bell,* 19 Cal.2d 488, 493, 494 [122 P.2d 22], has said that "Habeas corpus is also widely used to test the constitutionality not only of a statute but of the *procedure in petitioner's trial, even though the trial court has jurisdiction to try the petitioner* [citations] *and any infringement of constitutional right during the trial may be raised on appeal . . .*" (Emphasis added.)

█ If (as we have held) the trial court had jurisdiction to try these petitioners and to enter judgment, the question which has to be decided (in the light of what has been just quoted) is, whether habeas corpus can be used to test the constitutionality of the trial procedure *at this stage of the proceedings,* that is, after judgment and during the pendency of the appeal therefrom, or, to be more exact, whether it can be so used *instead of the appeal.* That question seems to be answered by the cases cited in *In re Connor,* 16 Cal.2d 701, *supra,* holding that habeas corpus cannot be used as a substitute for an appeal. The latest utterance of the Supreme Court on this subject is that found in *In re Seeley,* 29 Cal.2d 294, 296 [176 P.2d 24], as follows:

"In the determination of a proceeding in habeas corpus in this state the court is ordinarily concerned with an inquiry

into the jurisdiction of the court in which the prisoner was convicted. *It is the general rule that the writ may not be used to correct error nor be employed where there is a remedy by appeal or other direct attack.* But in exceptional cases it may be issued even though other remedies might have been available. (*In re Belt*, 159 U. S. 95, 100 [15 S.Ct. 987, 40 L.Ed. 88]; *In re Bell*, 19 Cal.2d 488 [122 P.2d 22]; *In re Connor*, 16 Cal.2d 701, 705, 712 [108 P.2d 10].)

"In *In re Bell, supra*, at page 494, this court said: 'There are other situations in which habeas corpus is used, not as a test of jursidiction, but to review a question of law that *cannot otherwise be raised* or is so important as to render the ordinary procedure inadequate." (Emphasis added.)

*In re Bell* was itself such a case for it came before the court after the petitioner had been convicted in the justices' court of violating an ordinance and the conviction had been affirmed on appeal in the superior court. In such instance, as pointed out in *In re Martinez*, 56 Cal.App.2d 473, 475 [132 P.2d 901], "there is no other way in which the question can be presented to a higher court."

There are two recent cases which illustrate and apply what was said in the Bell case respecting testing the constitutionality of the procedure in a criminal trial.

In the Wallace case, 24 Cal.2d 933 [152 P.2d 1], habeas corpus was held to be available because the ground on which the petitioner relied could not have been raised on his appeal (which had become final) as he obtained the information underlying his petition only after the death, in 1939, of one of the principal persons involved, at which time his time for appeal had expired. The court said:

"A violation of the defendant's constitutional rights during the trial leading to his conviction is ground for attack on the judgment in a habeas corpus proceeding *if the petitioner has no other adequate remedy to test the constitutionality of the proceeding resulting in his conviction* (*In re Bell*, 19 Cal. 2d 488, 494 [122 P.2d 22]; *Portnoy* v. *Superior Court*, 20 Cal.2d 375, 378 [125 P.2d 487]; *In re Silverstein*, 52 Cal.App. 2d 725 [126 P.2d 962]; *In re Connor*, 15 Cal.2d 161, 163 [99 P.2d 248]; *In re Connor*, 16 Cal.2d 701, 705 [108 P.2d 10])." (Emphasis added.)

In *In re Byrnes*, 26 Cal.2d 824, 827 [161 P.2d 376], the court said: "It is well settled that a writ of habeas corpus ordinarily may not be employed as a substitute for an appeal

(*In re Bell,* 19 Cal.2d 488, 492 [122 P.2d 22]), yet the scope of inquiry in such proceedings has been broadened rather than narrowed (*Johnson* v. *Zerbst,* 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed 1461]), and *the writ may be used to present questions of law that cannot otherwise be reviewed or are so important as to justify an extraordinary remedy (In re Bell, supra,* p. 494; *In re Silverstein,* 52 Cal.App.2d 725 [126 P.2d 962])." (Emphasis added.)

In the Byrnes case the court did not release the petitioner from custody. It directed the superior court to hear, within 90 days, any motion which Byrnes might make, looking to his relief from default in the preparation of a transcript on appeal, thereby aiding him to get his case before the appellate court. He had no remedy left but habeas corpus to accomplish this, and habeas corpus was in that case used as an auxiliary to his appeal.

In the McVickers case, 29 Cal.2d 264 [176 P.2d 40], attention is drawn to the expansion of the habeas corpus rule where, at page 273, it is said:

"The extent of the growth of the function of habeas corpus collaterally to attack judgments of conviction in the state is illustrated by comparing with recent decisions (e. g., *In re Connor* (1940), 16 Cal.2d 701, 712 [108 P.2d 10]; *In re Bell* (1942), 19 Cal.2d 488 [122 P.2d 22], and cases there cited; *In re Byrnes* (1945), 26 Cal.2d 824, 827 [161 P.2d 376]) the case of *Ex parte Max* (1872), 44 Cal. 579, 581, which pointed out the 'obvious dictinction between the office of a writ of error or an appeal, on the one hand, and a writ of habeas corpus upon the other.' "

The contrast is accentuated by the reference, at page 274, to the court's recent statement in the Byrnes case, *supra,* that "the scope of inquiry in such proceedings has been broadened rather than narrowed." In the recent cases, as we have seen, the broadening process was brought into play because in each of them the petitioner was left without any other vehicle for getting his constitutional or jurisdictional grievance before the court. In a case such as this, where the appeal is actually pending and awaiting briefing, if it should be held (as we are asked to hold) that habeas corpus is appropriate, then after every felony conviction where any of the rights mentioned in section 13 of article I are in issue, appeal as now known could be completely by-passed and habeas corpus substituted outright in its place.

The case of *Jackson* v. *Superior Court,* 10 Cal.2d 350 [74 P.2d 243, 113 A.L.R. 1422], is strongly relied on by the petitioners. That was a proceeding in prohibition where the writ was issued to halt a second trial at the threshold. In *Menjou* v. *Superior Court,* 128 Cal.App. 117 [16 P.2d 1007] mandate was used in the same way. From an early date the court has acted *sua sponte* to prevent a second trial (see *People* v. *Horn,* 70 Cal. 17 [11 P. 470]; *People* v. *Roberts,* 114 Cal. 67 [45 P. 1016] and *People* v. *Terrill,* 132 Cal. 497 [64 P. 894]), when it was self-evident that the defendant had been once in jeopardy and a second trial would be vain and useless. These cases are referred to in the Menjou opinion, page 122. It was doubtless on such a theory that *Jackson* v. *Superior Court* was decided. Prohibition, a purely preventive remedy, was invoked in that case at an altogether different stage of the proceedings—to stop the trial of a case. Here habeas corpus was invoked after the trial had gone through to judgment, on the claim that the court had no jurisdiction to enter such judgment. We are satisfied that the Jackson case is not controlling. *In re Berman,* 104 Cal.App. 259 [286 P. 1043], and its companion case, are the only reported cases which we have found where habeas corpus was used to halt further proceedings on the ground of jeopardy, and in the Berman case the remedy of habeas corpus was invoked at approximately the same stage of the proceedings as prohibition and mandate were invoked in the other cases.

For the foregoing reasons we are satisfied that habeas corpus is not available to the petitioners to test or examine the question of former acquittal and jeopardy arising because of the dismissal of the juror. That question is a debatable one and it will have to be decided on the appeal itself (see *In re Bell,* 19 Cal.2d 488, 495 [122 P.2d 22] and *In re Ballas,* 53 Cal. App. 109 [199 P. 816]). Because it is debatable the petitioners should be granted bail pending the decision on appeal and the present bail order should be continued in effect.

It is ordered that the order heretofore made on October 3, 1946, respecting bail be continued in effect pending the decision herein on appeal. In other respects, the writ is discharged.

Nourse, P. J., and Dooling, J., concurred.

Petitioners' application for a hearing by the Supreme Court was denied March 27, 1947.